**Ivan Steven JUNEBY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5606.**

Court of Appeals of Alaska.

March 11, 1982.

Jane F. Kauvar, Asst. Public Defender, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

\* MOORE, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

Before BRYNER, C. J., SINGLETON, J., and MOORE, Superior Court Judge.\*

OPINION

BRYNER, Chief Judge.

In this sentence appeal, we must consider the presumptive sentencing provisions of the Alaska Revised Criminal Code. Specifically, we are called upon to interpret and apply AS 12.55.155, which permits presumptive sentences fixed by AS 12.55.125 to be increased by the sentencing court upon a showing of aggravating factors and decreased upon a showing of mitigating factors.

On April 30, 1980, Ivan Juneby knocked on the door of a Fairbanks residence. The door was opened by a young woman, V.W., the only person in the house. V.W. allowed Juneby to enter in order to use the telephone. Once inside, however, Juneby attacked V.W. After beating and choking V.W. into submission, Juneby proceeded to rape her. When an acquaintance of V.W. knocked on her door, Juneby abruptly terminated his assault and fled. He was arrested a short time later.

Juneby subsequently entered pleas of *nolo contendere* to charges of burglary in the first degree, a class B felony,[1] and sexual assault in the first degree, a class A felony.[2] The maximum term provided for the burglary was ten years; for the sexual assault, the maximum was twenty years. *See* AS 12.55.125(d) and (c), respectively. Sentencing was held in Fairbanks on September 23, 1980, before Superior Court Judge Gerald J. Van Hoomissen. Juneby received a sentence of eight years' imprisonment for the burglary and twenty years' imprisonment for the sexual assault; the two sentences were imposed concurrently. He now appeals only the twenty-year sentence for sexual assault, claiming that the court gave undue weight to aggravating circumstances and that his sentence is excessive.

1. AS 11.46.300.

2. AS 11.41.410.

## I. THE PRESUMPTIVE SENTENCING PROVISIONS OF THE ALASKA REVISED CRIMINAL CODE

■■ At his sentencing, it was undisputed that Juneby had previously been convicted of grand larceny, a felony. Accordingly, upon his conviction of burglary and sexual assault, Juneby became subject to presumptive sentencing as a second felony offender under the provisions of the Alaska Revised Criminal Code. The presumptive sentencing provisions specifically applicable to Juneby are contained in AS 12.55.125(c)(2) and (d)(1); these provisions state, in pertinent part:

(c) A defendant convicted of a class A felony may be sentenced to a definite term of imprisonment of not more than 20 years, and shall be sentenced to the following presumptive terms . . . .

. . . .

(2) if the offense is a second felony conviction, 10 years;

. . . .

(d) A defendant convicted of a class B felony may be sentenced to a definite term of imprisonment of not more than 10 years, and shall be sentenced to the following presumptive terms . . . .

(1) if the offense is a second felony conviction, four years . . . .

Accordingly, Juneby was subject to presumptive terms of ten years for his sexual assault and four years for his burglary.[3] In the absence of extraordinary circumstances,[4] these presumptive sentences were mandatory, and the sentencing court was bound to impose them, subject only to adjustment for aggravating or mitigating factors in accordance with AS 12.55.155.[5]

In this appeal, Juneby challenges the sentencing court's interpretation and application of the provisions of AS 12.55.155 permitting adjustment of presumptive sentences upon proof of aggravating or mitigating factors. He further contends that Judge Van Hoomissen incorrectly concluded that the aggravating factors established in his case justified increasing his sentence for first degree sexual assault from the ten-year presumptive sentence prescribed under AS 12.55.125(c)(2) to the maximum twenty-year term for the offense.

Before we attempt to consider the merits of Juneby's claims, we must address two threshold matters. First, we believe that discussion of the basic structure and purposes of Alaska's presumptive sentencing scheme, with specific reference to the legislature's commentary on the code's sentencing provisions, will be helpful in providing a background for review of the sentencing court's decision. Second, we must consider the manner in which the revised code's presumptive sentencing provisions alter the previously existing scope of review in sentence appeals.

### A. Structure and Purposes of the Presumptive Sentencing Statutes

In 1977, when the Alaska Legislature began its consideration of a comprehensive revision of the former criminal code, there was a strong perception that the sentencing structure of Alaska's criminal statutes lacked coherence. See B. Stern, *The Proposed Alaska Revised Criminal Code*, 7 UCLA-Alaska L.Rev. 1, 10–11 (1977). Furthermore, based on the results of sentencing studies in Alaska,[6] the legislature was

---

**3.** The burglary and sexual assault committed by Juneby arose "out of a single, continuous criminal episode during which there was no substantial change in the nature of the criminal objective . . . ." AS 12.55.145(a)(3). Accordingly, both crimes constitute a single conviction for the purpose of applying presumptive sentencing; thus, Juneby's conviction for the burglary, although it technically occurred first, could not be considered a second felony subjecting him to presumptive sentencing as a third felony offender for sexual assault. *Id.* Under the provisions of AS 12.55.025(e), how-

ever, the sentencing judge was authorized to impose sentences for Juneby's convictions of burglary and sexual assault either consecutively or concurrently.

**4.** *See* AS 12.55.165 and 12.55.175.

**5.** AS 12.55.155 is set out in full at note 13, *infra*.

**6.** *See generally Alaska Felony Sentencing Patterns: A Multivariate Statistical Analysis (1974–76),* Alaska Judicial Council (April 1977);

concerned with eliminating disparity in the sentencing of similarly situated offenders and making criminal sentencing a predictable, internally consistent process. *See* Commentary on the Alaska Revised Criminal Code, Senate Journal Supplement No. 47 at 148, 1978 Senate Journal 1399.[7]

Decisions of the Alaska Supreme Court in sentence appeals had given little significance to uniformity as a goal of sentencing or of appellate review of sentences.[8] The markedly different approach to sentencing taken by the Alaska Legislature in enacting the Alaska Revised Criminal Code is made explicit in the first section of the new code's chapter dealing with sentencing. AS 12.55.005 provides, in relevant part:

> *Declaration Of Purpose.* The purpose of this chapter is to provide the means for determining the appropriate sentence to be imposed upon conviction of an offense. *The legislature finds that the elimination of unjustified disparity in sentences and the attainment of reasonable uniformity in sentences can best be achieved through a sentencing framework fixed by statute*

*as provided in this chapter.* [Emphasis added.]

The presumptive sentencing provisions of the Revised Criminal Code, contained in AS 12.55.125 and 12.55.155, thus reflect the legislature's intent to assure predictability and uniformity in sentencing by the use of fixed and relatively inflexible sentences, statutorily prescribed, for persons convicted of second or subsequent felony offenses.

Under the provisions of AS 12.55.125, courts sentencing individuals convicted of their first felony offense are not expressly limited in the sentence that can be imposed;[9] thus, much of the traditionally broad discretion to decide what kind of a sentence to impose in each case is retained.[10] For second and subsequent felony offenders, however, the legislature has evidenced a strong resolution to restrict judicial discretion[11] and to assure that, as a general rule, statutorily mandated sentences would be imposed. AS 12.55.125(c)(2), (c)(3), (d)(1), (d)(2), (e)(1), and (e)(2), establish presumptive sentences to be imposed upon persons convicted of class A,

Cutler, *Sentencing in Alaska: A Description of the Process and Summary of Statistical Data for 1973*, Alaska Judicial Council (March 1975).

7. The Commentary to the Alaska Revised Criminal Code, published as Senate Journal Supplement No. 47 in 1978, was also adopted by the Alaska House of Representatives as its letter of intent for the code. *See* 1978 House Journal 1716.

8. For example, the Alaska Supreme Court has said:

> [W]e have stated that it is not the purpose of appellate review to enforce uniformity in sentencing.
>
> Sentencing is an individualized process, and all persons committing the same crime should not necessarily receive like sentences. Yet, theoretically, if two persons of identical background commit the same offense, they should receive like punishment. Sentencing, however, is not an exact science, and disparities will occur.

*Padie v. State*, 594 P.2d 50, 61 (Alaska 1979) (footnotes omitted), *quoting, Burleson v. State*, 543 P.2d 1195, 1202 (Alaska 1975).

9. Exceptions are carved out for a number of the most serious offenses, as to which the statute requires a mandatory sentence, even for a first offense. *See* AS 12.55.125(a) (20-year minimum for first degree murder); AS 12.55.-

125(b) (five-year minimum for second degree murder or kidnapping); and AS 12.55.125(c)(1) (six-year presumptive sentence for all first offense class A felonies except manslaughter where the defendant possessed or used a firearm or caused serious physical injury).

10. Even as to first offense felonies for which no presumptive or minimum term is established, however, the revised code's provisions are restrictive of judicial sentencing discretion to a certain degree. *See, e.g.,* AS 12.55.015(b) (establishing circumstances under which incarceration is required for a first offender); *Austin v. State*, 627 P.2d 657 (Alaska App.1981) (holding that first offenders should normally receive more favorable sentences than the presumptive term for second offenders).

11. It is manifest that the legislature's focus on eliminating disparity and achieving uniformity in sentences was calculated to significantly restrict the trial court's traditionally broad sentencing discretion. This is expressly recognized in the language of AS 12.55.005, which stresses that the goals of eliminating disparity and achieving uniformity in sentencing "can best be achieved through a sentencing framework *fixed by statute* ...." (Emphasis added.)

B, and C felonies when their convictions are for second or subsequent felonies.[12] Under the provisions of AS 12.55.125(g), these presumptive terms may not be suspended or reduced, nor is an offender who is subject to presumptive sentencing eligible to receive a suspended imposition of sentence.

Only two methods are provided for a sentencing judge to deviate from a presumptive sentence established under AS 12.55.125. One occurs when the judge concludes that extraordinary circumstances exist, so that manifest injustice would result if normal presumptive sentencing procedures, as set forth in AS 12.55.125 and

12.55.155, were followed. Upon reaching such a conclusion, the judge must refer the case for sentencing to a specially constituted three-judge panel, which is empowered to impose a sentence without regard to the presumptive terms provided for under AS 12.55.125. See AS 12.55.165 and 12.55.175. The second alternative, provided for in AS 12.55.155, allows a sentencing judge to adjust a presumptive term upward or downward based on a finding of aggravating or mitigating factors. Under AS 12.55.155(c), eighteen aggravating factors are enumerated; thirteen mitigating factors are listed under AS 12.55.155(d).[13] Only the factors

12. Determination of whether a person is a second, third, or subsequent felony offender for purposes of applying the presumptive sentencing provisions of AS 12.55.125 is governed by the provisions of AS 12.55.145 and 12.55.-185(6), (7), and (8).

13. Because its provisions are crucial to the disposition of this case, the text of AS 12.55.155 will be set out in full:

*Factors in aggravation and mitigation.* (a) If a defendant is convicted of an offense and is subject to sentencing under AS 12.55.-125(c)(1), (c)(2), (c)(3), (d)(1), (d)(2), (e)(1), or (e)(2) of this chapter and

(1) the presumptive term is four years or less, the court may decrease the presumptive term by an amount as great as the presumptive term for factors in mitigation or may increase the presumptive term up to the maximum term of imprisonment for factors in aggravation;

(2) the presumptive term of imprisonment is more than four years the court may decrease the presumptive term by an amount as great as 50 per cent of the presumptive term for factors in mitigation or may increase the presumptive term up to the maximum term of imprisonment for factors in aggravation.

(b) Sentence increments and decrements under this section shall be based on the totality of the aggravating and mitigating factors set out in (c) and (d) of this section.

(c) The following factors shall be considered by the sentencing court and may aggravate the presumptive terms set out in AS 12.55.125:

(1) a person, other than an accomplice, sustained physical injury as a direct result of the defendant's conduct;

(2) the defendant's conduct during the commission of the offense manifested deliberate cruelty to another person;

(3) the defendant was the leader of a group of three or more persons who participated in the offense;

(4) the defendant employed a dangerous instrument in furtherance of the offense;

(5) the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, disability, ill health, or extreme youth or was for any other reason substantially incapable of exercising normal physical or mental powers of resistance;

(6) the defendant's conduct created a risk of imminent physical injury to three or more persons, other than accomplices;

(7) a prior felony conviction considered for the purpose of invoking the presumptive terms of this chapter was of a more serious class of offense than the present offense;

(8) the defendant has a criminal history consisting of prior convictions for offenses, including misdemeanors, that involved aggravated or repeated instances of assaultive behavior;

(9) the defendant knew that the offense involved more than one victim;

(10) the conduct constituting the offense was among the most serious conduct included in the definition of the offense;

(11) the defendant committed the offense pursuant to an agreement that he either pay or be paid for the commission of the offense, and the pecuniary incentive was beyond that inherent in the offense itself;

(12) the defendant was on release under AS 12.30.020 or 12.30.040 for another felony charge or conviction or for a misdemeanor charge or conviction having assault as a necessary element;

(13) the defendant knowingly directed the conduct constituting the offense at an active officer of the court or at an active or former judicial officer, prosecuting attorney, law enforcement officer, correctional employee, or fireman during or because of the exercise of his official duties;

(14) the defendant was a member of an organized group of five or more persons, and

specifically stated may be considered by the court in determining whether a presumptive sentence should be adjusted.[14]

■ It is manifest that the legislature did not intend aggravating and mitigating circumstances to be lightly found. This is reflected in AS 12.55.155(f), which states, in pertinent part: "Factors in aggravation and factors in mitigation must be established by clear and convincing evidence . . . ." The requirement of proof by clear and convincing evidence is a strong indication of the legislature's intent to prohibit frequent and substantial departure by sentencing judges from the presumptive sentences that it statutorily prescribed. The legislature emphasized this intent in commenting upon the clear and convincing evidence requirement of AS 12.55.155(f):

> Factors in aggravation or mitigation must be proven by 'clear and convincing' evidence so that deviation from the pre-

the offense was committed to further the criminal objectives of the group;

(15) the defendant has three or more prior felony convictions;

(16) the defendant's criminal conduct was designed to obtain substantial pecuniary gain and the risk of prosecution and punishment for the conduct is slight;

(17) the offense was one of a continuing series of criminal offenses committed in furtherance of illegal business activities from which the defendant derives a major portion of his income;

(18) the offense was a crime specified in AS 11.41 and was committed against a spouse, a former spouse, or a member of the social unit comprised of those living together in the same dwelling as the defendant.

(d) The following factors shall be considered by the sentencing court and may mitigate the presumptive terms set out in AS 12.55.125:

(1) the offense was principally accomplished by another person, and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim;

(2) the defendant, although an accomplice, played only a minor role in the commission of the offense;

(3) the defendant committed the offense under some degree of duress, coercion, threat, or compulsion insufficient to constitute a complete defense, but which significantly affected his conduct;

(4) the conduct of a youthful defendant was substantially influenced by another person more mature than the defendant;

(5) the conduct of an aged defendant was substantially a product of physical or mental infirmities resulting from his age;

(6) in a conviction for assault under AS 11.41.200—11.41.230, the defendant acted with serious provocation from the victim;

(7) except in the case of a crime defined by AS 11.41.410—11.41.470, the victim provoked the crime to a significant degree;

(8) a prior felony conviction considered for the purpose of invoking the presumptive terms of this chapter was of a less serious class of offense than the present offense;

(9) the conduct constituting the offense was among the least serious conduct included in the definition of the offense;

(10) before the defendant knew that his criminal conduct had been discovered, he fully compensated or made a good faith effort to fully compensate the victim of his criminal conduct for any damage or injury sustained;

(11) the defendant was motivated to commit the offense solely by an overwhelming compulsion to provide for emergency necessities for his immediate family;

(12) the defendant assisted authorities to detect or apprehend other persons who committed the offense with him;

(13) the facts surrounding the commission of the offense and any previous offenses by the defendant establish that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment.

(e) If a factor in aggravation is a necessary element of the present offense, that factor may not be used to aggravate the presumptive term. If a factor in mitigation is raised at trial as a defense reducing the offense charged to a lesser included offense, that factor may not be used to mitigate the presumptive term.

(f) If the state seeks to establish a factor in aggravation at sentencing or if the defendant seeks to establish a factor in mitigation at sentencing, written notice must be served on the opposing party and filed with the court not later than 10 days before the date set for imposition of sentence. Factors in aggravation and factors in mitigation must be established by clear and convincing evidence before the court sitting without a jury. All findings must be set out with specificity.

(g) Voluntary alcohol or other drug intoxication or chronic alcoholism or other drug addiction may not be considered an aggravating or mitigating factor.

(h) As used in this section, "serious provocation" has the meaning ascribed to it in AS 11.41.115(f).

14. Commentary on the Alaska Revised Criminal Code, *supra* at 160.

sumptive sentence does not occur routinely.

Commentary on the Alaska Revised Criminal Code, *supra* at 161.

■■■ The presumptive terms set out in AS 12.55.125 were thus intended as appropriate for imposition in most cases, without significant upward or downward adjustment. The commentary to AS 12.55.125 lends further support to this conclusion:

A presumptive sentence is a legislative determination of the term of imprisonment *the average defendant convicted of an offense should be sentenced to*, absent the presence of legislatively prescribed factors in aggravation or mitigation or extraordinary circumstances.

Commentary on the Alaska Revised Criminal Code, *supra* at 153 (emphasis added). Under the view espoused by the legislature, a presumptive term represents the appropriate sentence for cases that fall within the middle-ground between the opposing extremes of the most and least serious conduct for a given crime. It is to be expected, then, that sentences equalling or varying only slightly from the presumptive terms will generally be suitable when presumptive sentencing applies. Minor adjustments for aggravating or mitigating circumstances might be appropriate in a significant number of cases; only in unusual cases, however, can it be anticipated that substantial deviation from the presumptive term will be called for.

When viewed in the light of the fundamental goals of the new sentencing statutes, the rationale for this relatively inflexible sentencing framework is readily understood. If sentencing courts were permitted, under the presumptive sentencing scheme, to deviate routinely and substantially from the presumptive terms prescribed by law, the fundamental purposes of eliminating disparity and establishing reasonable uniformity in sentencing would be completely undermined. Unless the provisions of AS 12.55.155 are adhered to strictly, and unless a measured and restrained approach is taken in the adjustment of presumptive sentences for both aggravating and mitigating factors, then the prospect of attaining the statutory goal of uniform treatment for similarly situated offenders would quickly be eroded, the potential for irrational disparity in sentencing would threaten to become reality, and the revised code's carefully fashioned system of escalating penalties for repeat offenders would be rendered utterly ineffective.

### B. Standard of Review for Appeals from Presumptive Sentences

We next address the question of the appropriate scope of appellate review in sentence appeals evolving from cases in which presumptive sentences are imposed. The state has argued that, in deciding Juneby's sentence appeal, this court "is limited to an inquiry of whether the sentence imposed by the trial judge was clearly mistaken." We disagree.

■■ The "clearly mistaken" standard was established for resolution of sentence appeals in *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974), well before the presumptive sentencing provisions of the Alaska Revised Criminal Code were adopted. Application of the "clearly mistaken" standard was appropriate under our former sentencing provisions in order to determine whether the sentencing court properly exercised its discretion in light of the broad sentencing goals enumerated in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).[15] However, when the presumptive sentencing provisions of AS 12.55.125 and 12.55.155 apply, neither the *Chaney* criteria nor the "clearly mistaken" standard of appellate review will suffice to assure accurate resolution of sentence appeals.

■■■ As the commentary to the sentencing provisions of the revised code ex-

---

15. The legislature has specifically enumerated the sentencing goals established in *State v. Chaney* as primary considerations for courts in imposing non-presumptive sentences. *See* AS 12.55.005(2)–(6). *See also* Commentary on the Alaska Revised Criminal Code, *supra* at 148–49. Thus, in misdemeanors and first felony offenses that are not subject to presumptive sentencing, the "clearly mistaken" standard will remain appropriate.

pressly indicates, when the presumptive sentencing statutes apply, the *Chaney* criteria are no longer of primary importance in determining the sentence.[16] By the same token, in a sentence appeal involving the presumptive sentencing provisions of AS 12.55.125 and 12.55.155, the scope of our review will necessarily entail more than the simple application of the "clearly mistaken" standard and the *Chaney* criteria. This is because the procedures established by the presumptive sentencing statutes will normally require us to consider issues other than the ultimate question of whether the sentence imposed was excessive or too lenient. On the one hand, we will often be asked to consider whether the presumptive sentencing statutes were properly interpreted or whether the procedures they establish were correctly followed. Matters such as these involve questions of law, as to which we are entitled to make an independent evaluation, substituting our judgment for that of the superior court. *See, e.g., Troyer v. State*, 614 P.2d 313, 318 (Alaska 1980); *Johnson v. State*, 631 P.2d 508, 512 (Alaska App.1981). On the other hand, we will also frequently be called upon to decide whether predominately factual determinations of a sentencing court—such as a judge's findings as to the existence of aggravating or mitigating factors—were correctly made and are supported by evidence in the record. Issues of this type will be subject to the more circumscribed "clearly erroneous" standard of appellate review. Under this standard, the sentencing court's factual findings are entitled to deference,[17] and the court's decision must be upheld unless we are "left with the definite and firm conviction on the entire record that a mistake has been made." *Troyer v. State*, 614 P.2d at 318 n.11. *See also Johnson v. State*, 631 P.2d at 512; Alaska R.Civ.P. 52(a).

Thus, because of the structured and comprehensive approach toward sentencing adopted by the Revised Criminal Code, when dealing with presumptively imposed sentences, we will often be required to use not only the "clearly mistaken" standard adopted in *McClain v. State*, but also the well established standards that normally apply to appellate review of a trial

---

16. The commentary to AS 12.55.005 provides:

    Factors to be considered by a court in imposing sentence are set out in paragraphs (1)–(6).

    (1) requires the court to consider the seriousness of the offense as compared with other offenses; this consideration reflects the 'just deserts' theory of punishment, which holds that justice requires that a sentence imposed on a defendant should be based on the crime he committed rather than on speculation as to his future behavior. The considerations in paragraphs (2)–(6) are largely a restatement of the Alaska Supreme Court's interpretation of the mandate of Article 1, section 12 of the Alaska Constitution which provides that 'Penal administration shall be based on the principle of reformation and upon the need for protecting the public.' *State v. Chaney*, 447 P.2d 441 (Alaska 1970).

    Each of the considerations set out in paragraphs (1)–(6) is to be considered by the court before imposing sentence. The factors are not listed in order of importance. *In sentencing repeat felons, however, paragraph (1) will be of primary importance, because the presumptive sentencing provisions in §§ 12.55.125–12.55.175 provide that the presumptive sentence for repeat felons is some term of imprisonment absent a finding by the*

court that factors in mitigation or extraordinary circumstances exist.

Commentary on the Alaska Revised Criminal Code, *supra* at 148–49 (emphasis added).

17. Under the "clearly erroneous" standard of appellate review, the amount of deference that we must give to factual determinations of the sentencing court will vary, depending upon the extent to which the sentencing court relied upon testimony in which the demeanor and credibility of witnesses played an important role:

    A trial court's findings of fact are entitled to great deference; on appeal to a higher court they 'shall not be set aside unless *clearly erroneous.*' Alaska R.Civ.P. 52(a) (emphasis added). *See Troyer v. State*, 614 P.2d 313, 318–19 (Alaska 1980) (clearly erroneous test applies in criminal cases). Where, however, the court intends only to review a decision of a subordinate court, *on the record of the proceedings below*, its decision is entitled to less deference. On appeal to the next level of courts, its decision can be independently reviewed.

*Halligan v. State*, 624 P.2d 281, 283 (Alaska 1981). *See also Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co.*, 482 P.2d 842, 845–48 (Alaska 1971).

court's factual determinations and legal conclusions.[18]

■■■■ This is not to say that the *Chaney* criteria and the "clearly mistaken" standard of review on appeal will be wholly irrelevant in sentence appeals involving presumptive sentences. Once a sentencing court has correctly interpreted and applied the presumptive sentencing provisions of the code and has properly determined the existence of aggravating or mitigating factors, then it will have the discretion to adjust the presumptive sentence for the particular offense,[19] within the limits prescribed by AS 12.55.155(a)(1) and (2).[20] In such instances the *Chaney* criteria, as stated in AS 12.55.005(2)–(6), will be relevant to the sentencing court's determination of the amount by which the presumptive term should be adjusted.[21] Thus, in sentence appeals involving presumptive sentences, it is only when we are called upon to decide if the sentencing court properly exercised its discretion to adjust a presumptive term for aggravating or mitigating factors that the "clearly mistaken" standard of review will continue to govern.

## II. EVALUATION OF THE SENTENCING PROCEEDINGS IN THIS CASE IN LIGHT OF THE REQUIREMENTS OF ALASKA'S PRESUMPTIVE SENTENCING STATUTES

We now proceed to consider the manner in which Juneby's sentencing was conducted below, in light of the presumptive sentencing provisions of AS 12.55.125 and 12.55.155. We conclude that Juneby's sentence was not imposed in accordance with the requirements of these sections; our decision is

18. We note that sentence appeals are currently defined to include only cases in which it is asserted that the sentence imposed was either excessive or too lenient. *See* Alaska R.App.P. 215(a)(1) and 202(c). Under a restrictive interpretation of the rules it could be argued that only the narrow question of whether a presumptive sentence, as adjusted, is excessive or too lenient can be raised as a sentence appeal. We think, however, that such an interpretation would be unduly restrictive. Under the highly structured sentencing procedures established in AS 12.55.125 and 12.55.155, sentences presumptively imposed will, more often than not, raise issues of statutory interpretation, challenges to the sufficiency of the evidence under the "clear and convincing" standard, and questions of whether procedures established by the presumptive sentencing statutes were correctly followed. Issues such as these are tied sufficiently closely to the ultimate question of excessiveness or leniency to be included within the scope of sentence appeals. Conversely, appeals raising legal issues broader than those described above—for example, challenges to the validity of a provision of the presumptive sentencing statutes or to the validity of the presumptive sentencing scheme itself—should be regarded as merit appeals.

19. AS 12.55.155(b) addresses the sentencing court's discretion to adjust a presumptive sentence upward or downward in light of aggravating and mitigating factors, providing, in pertinent part:

(b) Sentence increments and decrements under this section shall be based on the totality of the aggravating and mitigating factors
....

20. Under AS 12.55.155(a)(1), where the presumptive term is four years or less, the sentencing court, upon a finding of mitigating factors, may decrease the presumptive sentence by any amount; upon a finding of aggravating factors, the court may increase the sentence by any amount up to the maximum term. Under AS 12.55.155(a)(2), if the presumptive term is more than four years, the sentencing court, upon a finding of mitigating factors, may decrease the presumptive term by as much as 50 per cent; for aggravating factors, the sentence may be increased up to the maximum term.

21. We think it is important to avoid a mechanistic approach toward determining the amount by which a presumptive sentence should be adjusted in light of aggravating or mitigating factors; application of the *Chaney* criteria, as stated in AS 12.55.005(2)–(6), will assure appropriate consideration of individual fact situations on a case-by-case basis. When applied to the adjustment of a presumptive sentence, however, the *Chaney* analysis should not be broadened into a consideration of all the circumstances of the offense, as if the sentence were being imposed anew, without regard for the presumptive term. Instead, consideration of the *Chaney* criteria should focus specifically on the aggravating or mitigating conduct in the particular case. The presumptive term should remain as the starting point of the analysis, and the *Chaney* criteria should be employed for the limited purpose of determining the extent to which the totality of the aggravating and mitigating factors will justify deviation from the presumptive term.

compelled by a number of significant problems involved in the imposition of Juneby's sentence.

After entering pleas of *nolo contendere*, but prior to the time set for sentencing, Juneby gave timely notice that he would present evidence of two mitigating factors at sentencing. The mitigating factors specified were, first, that his prior felony, grand larceny, "was of a less serious class of offense than the present offense," AS 12.55.-155(d)(8), and, second, that his "conduct constituting the offense was among the least serious conduct included in the definition of the offense," AS 12.55.155(d)(9). The prosecution gave timely notice that it would rely on three factors in aggravation at sentencing. These factors were, first, that Juneby's victim "sustained physical injury as a direct result of the defendant's conduct," AS 12.55.155(c)(1), second, that Juneby's "conduct during the commission of the offense manifested deliberate cruelty" toward his victim, AS 12.55.155(c)(2), and, third, that Juneby's "conduct constituting the offense was among the most serious

conduct included in the definition of the offense," AS 12.55.155(c)(10).

At Juneby's sentencing, Judge Van Hoomissen, after reviewing the presentence report, considering the evidence, and hearing argument, concluded that the three alleged aggravating factors had been established. He found that V.W. had sustained physical injury, that Juneby had acted with deliberate cruelty, and that his conduct was among the most serious conduct within the definition of first degree sexual assault. The judge also found the existence of a mitigating factor: Juneby's prior conviction was for a less serious offense.[22] In accordance with AS 12.55.155(f),[23] the judge expressly indicated that his findings were based on clear and convincing evidence.

Judge Van Hoomissen then engaged in an extensive consideration of the sentencing criteria established by *State v. Chaney*, 477 P.2d at 444. He took Juneby's background into account,[24] giving particular emphasis to Juneby's apparent problems with alcoholism.[25] The judge concluded by

**22.** The specific comments of Judge Van Hoomissen on this point indicate the possibility of some confusion on his part. He stated, "I am prepared to find that there are some mitigating circumstances and the only one being that I can see is that—the fact that *the prior offenses were lesser offenses.*" (Emphasis added.) This reference to "prior offenses" is difficult to understand, since the only relevant prior offense for the purpose of determining whether a mitigating factor existed in this case under AS 12.55.155(d)(8) was Juneby's prior felony conviction for grand larceny.

**23.** The relevant portion of AS 12.55.155(f) states:

Factors in aggravation and factors in mitigation must be established by clear and convincing evidence before the court sitting without the jury. All findings must be set out with specificity.

**24.** Juneby's background may be summarized briefly. Juneby was born in Fairbanks and was 27 years old when he committed this offense. He was a high school graduate, but had no specialized occupational training or experience. His history of employment as a laborer was sporadic, and he was unemployed at the time of the offense. According to Juneby's own statements, he began drinking heavily at age 18. Between 1972 and 1979, Juneby was convicted of six misdemeanors, none for crimes of

violence. In April, 1979, Juneby was convicted of grand larceny, a felony; he received a sentence of three years' imprisonment, with all but two months suspended. While on probation, Juneby's performance was poor in both vocational training and alcohol rehabilitation programs. Juneby was still on probation when he committed this assault.

**25.** The judge's remarks included an extensive commentary on Juneby's history of alcoholism and the fact that the present offenses were committed while Juneby was intoxicated. At no point in the course of his discussion of Juneby's alcoholism and its effect on the sentence imposed did Judge Van Hoomissen indicate an awareness of AS 12.55.155(g), which provides:

Voluntary alcohol or other drug intoxication or chronic alcoholism or other drug addiction may not be considered an aggravating or mitigating factor.

We have recently held that the provisions of AS 12.55.155(g) do not prohibit a sentencing judge from considering a defendant's history of alcohol or drug abuse for the limited purpose of "determining the extent to which rehabilitation will realistically be accomplished by the sentence which [the court] intends to impose." *State v. Ahwinona*, 635 P.2d 488, 491 n.3 (Alaska App.1981). It is not clear from Judge Van Hoomissen's sentencing remarks that his con-

indicating that he would follow the recommendation of the presentence report, which suggested an eight-year term for the burglary and a maximum, twenty-year term for the sexual assault. At no point did the judge make reference to the ten-year presumptive sentence prescribed by AS 12.55.-125(c)(2) for Juneby's first degree sexual assault; nor did the judge make any attempt to explain in specific terms why he believed that the three aggravating factors that he had found, coupled with the one mitigating factor, justified departing from the ten-year presumptive term by imposition of the maximum sentence of twenty years for the sexual assault.[26]

We will separately discuss the sentencing judge's findings with respect to each of the three aggravating factors.

### A. *Physical Injuries as an Aggravating Factor*

Judge Van Hoomissen specifically determined that Juneby's victim, V.W., sustained physical injuries as a result of the offense; the judge thus concluded that the state had established the aggravating factor set forth in AS 12.55.155(c)(1).[27]

In order to establish the aggravating factor of physical injury, the state presented a tape recorded interview of V.W.; its admissibility was stipulated to by Juneby. The state also introduced photographs taken shortly after the assault, which showed V.W.'s face.

V.W.'s statements indicated that Juneby had knocked at her door and asked about a former girlfriend of his who had lived next door. When V.W. told him that she had seen a moving van there recently, Juneby asked to use V.W.'s phone; V.W. allowed him to enter. After an unsuccessful attempt to call a moving company, Juneby abruptly attacked V.W. He beat her repeatedly about the face and ribs with his fists, and then he twisted her arm and dragged her down a corridor into a bathroom. There, Juneby forced V.W. into submission by choking her. He forcibly pressed her throat against the edge of a clothes dryer, causing V.W. to lose her breath for a short time. At this point, V.W. did not know why Juneby was attacking her and thought that he was trying to kill her. Suddenly, Juneby ceased choking his victim; he commanded her to undress and then proceeded to rape her. The photographs of V.W. show that her face was bruised and swollen following this incident. In addition, V.W. stated that her ribs were badly bruised. These injuries were treated by a physician after the incident, but V.W. was not hospitalized. Although V.W. experienced considerable pain and discomfort for several weeks, she suffered no permanent disfigurement or physical impairment.

Juneby does not contest the fact that V.W. sustained physical injury within the definition of AS 12.55.155(c)(1); he does, however, question the amount of weight that should properly be assigned to this aggravating factor in adjusting the presumptive term of ten years called for by AS 12.55.125(c)(2).

---

sideration of Juneby's history of alcoholism was properly restricted and that it did not infringe upon the prohibitions of AS 12.55.155(g). In light of the language of AS 12.55.155(g) limiting the extent to which alcoholism or alcohol abuse can be considered in imposing sentence, we believe that in any case where a sentencing court does consider alcohol abuse by the offender, an express statement should be made, indicating that the purposes for which the defendant's alcoholism was considered were properly confined to those described in *Ahwinona* and that the court's actions are not in derogation of AS 12.55.155(g).

**26.** Nor did the presentence report upon which Judge Van Hoomissen relied recognize the pre-

sumptive ten-year term prescribed by AS 12.-55.125(c)(2). The presentence report was also silent, in making its recommendation to the court, as to the reasons why the recommended departure from the presumptive term would be justified. It appears that, in making his recommendations to the court, the probation officer who prepared the presentence report may simply have been unaware that the presumptive sentencing statutes applied to this case.

**27.** AS 12.55.155(c)(1) provides that an aggravating factor may be found when "a person, other than an accomplice, sustained physical injury as a direct result of the defendant's conduct . . . ."

The mere proof of an aggravating or mitigating factor cannot be deemed sufficient, in and of itself, to justify an increase or decrease of a presumptive term. Increases or decreases of presumptive terms should not be the automatic consequence when aggravating or mitigating factors are proved. This is apparent from the language contained at the beginning of subsections (c) and (d) of AS 12.55.155. Subsections (c) and (d) provide, in pertinent part, that aggravating and mitigating factors "*shall* be considered by the sentencing court and *may* aggravate [or mitigate] the presumptive terms" established by law.[28] (Emphasis added.)

In order to determine the realistic impact that proof of an aggravating or mitigating circumstance should have on adjustment of a presumptive sentence in any given case, we believe it essential to consider not only the specific conduct constituting the aggravating or mitigating factor, but also the nature of the crime charged. With specific reference to the aggravating factor of injury to others, where the crime charged is one that does not ordinarily involve the use of force or violence in its perpetration, the fact that a person sustains injury—even if the injury is relatively slight—assumes considerable importance as an aggravating factor. This is so because cases falling within the middle-range of seriousness for such offenses would involve no violence or injury. Hence, any actual injury would constitute a significant deviation from the norm for the offense; cases involving actual injury would fall significantly nearer to that end of the spectrum that includes the most aggravated conduct for the offense.

By contrast, where the existence of injury is a common element of the crime charged, or where the crime is one typically committed by violent means, the same analysis requires far less weight to be given to relatively minor injuries. It would be appropriate to place significant weight on the aggravating factor of physical injury in such cases only when the injury is so severe that it can realistically be said to deviate significantly from the types of injury characteristic of the offense.

In Juneby's case, the crime charged was sexual assault in the first degree, as defined in AS 11.41.410(a)(1), which states:

(a) A person commits the crime of sexual assault in the first degree if,

(1) being any age, he engages in sexual penetration with another person without consent of that person . . . .

This particular offense is essentially the equivalent of the crime of rape under prior law. We would be blinding ourselves to reality if we did not recognize that, in most cases involving rape, or sexual assault in the first degree under AS 11.41.410(a)(1), actual or threatened violence will be involved, and the victim will suffer at least some level of physical injury or discomfort. The use of force and the infliction of at least some physical injury to the victim are, realistically, characteristic of the crime of rape. Indeed, it is the prevailing view that rape is primarily a crime of violence, as distinguished from a sexual offense. *See, e.g.*, C. Silberman, *Criminal Violence, Criminal Justice* 3–20 (1978). As with all other

---

**28.** The burden imposed upon the parties to establish aggravating and mitigating circumstances may be likened to the procedural requirements governing probation revocation hearings. Revocation hearings involve two distinct phases: the first is to establish existence of a violation; the second is to determine if the violation actually warrants revocation of probation. *Holton v. State*, 602 P.2d 1228, 1238 (Alaska 1979); *Trumbly v. State*, 515 P.2d 707, 709 (Alaska 1973). In probation revocation proceedings, the state, since it is the moving party, bears the burden of proof and of persuasion as to both phases of the proceeding. *Hol-*

*ton v. State*, 602 P.2d at 1238. Similarly, in sentencing proceedings involving allegations of aggravating and mitigating circumstances, we believe that the provisions of AS 12.55.155(f) require the party seeking to establish a factor to bear a dual burden. First, the party must prove to the court by clear and convincing evidence the existence of the alleged factor, and, second, the party must provide the court with sufficient reasons to justify a conclusion, by clear and convincing evidence, that the factor warrants deviation from the statutorily prescribed presumptive sentence.

presumptive sentences, the ten-year presumptive term for first degree sexual assault was meant by the legislature to be appropriate in the majority of cases—those cases involving conduct that is characteristic of the offense of rape and that falls into the middle-ground between the most serious and least serious extremes for the offense. It must therefore be recognized that this presumptive term takes into account the high potential for the use of violence and the likelihood of some physical injury in first degree sexual assaults falling within the definition of AS 11.41.410(a)(1).

Where, as here, violence and injury are characteristic of an offense defined by statute, the mere fact of some physical injury to the victim as a result of the defendant's conduct, though technically an aggravating factor under AS 12.55.-155(c)(1), will not justify a significant increase in the presumptive term. Thus, when a charge of sexual assault in the first degree is based on a theory of rape under subsection (a)(1) of AS 11.41.410, in order to justify a substantial increase in the presumptive term the prosecution must bear the burden of making a clear and convincing showing that the injuries were unusual in nature or uncharacteristically severe. Progressively greater increases in the presumptive term will be justified as the injuries inflicted increase in severity; more substantial increases should be reserved for the most severe category of injuries: those included within the definition of "serious physical injury" under the provisions of AS 11.81.900.[29]

In the present case, the evidence presented to the sentencing court established that, in beating his victim, Juneby inflicted visible and painful injuries. The injuries did not, however, require extensive treatment, they apparently resulted in no permanent physical impairment, they were not life-threatening, and they created no lasting disfigurement. We do not by any means minimize the extent of the suffering inflicted upon Juneby's victim. However, we believe that the physical injuries inflicted by Juneby cannot be deemed to approach the definition of "serious physical injury" contained in AS 11.81.900(b)(49). Nor do we think that these injuries—though perhaps more severe than those in many cases—are highly uncharacteristic of injuries all too frequently suffered by rape victims. Accordingly, we do not believe that these injuries, standing alone, would justify a substantial increase in Juneby's presumptive term.

On the other hand, the evidence before Judge Van Hoomissen also showed that Juneby choked his victim, both with his hands and by pressing her throat against the edge of a clothes dryer. Although V.W. ultimately sustained no permanent injury, we believe that both the extent of force and the method used by Juneby to choke V.W. might be found to approach the statutory definition of serious physical injury. This question, however, is one of fact, to be determined by the sentencing court in the first instance. At the original sentencing proceeding, the sentencing judge apparently did not specifically consider the statutory definition of serious physical injury. Moreover, it is not clear that the judge correctly determined the extent to which V.W.'s injuries should affect the presumptive term. There is no indication in the record that the judge considered the seriousness of the injuries suffered by V.W. in relation to injuries typically inflicted on rape victims. In fact, the judge failed to make any findings with respect to this aggravating factor, other than the general finding that it had been established by clear and convincing evidence.

29. AS 12.55.185(9) adopts for use in the sentencing provisions of the Alaska Revised Criminal Code the definition of "serious physical injury" set out in AS 11.81.900(b)(49). Under AS 11.81.900(b)(49),

'serious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of a bodily organ, or physical injury which unlawfully terminates a pregnancy . . . .

Because Judge Van Hoomissen was faced in this case with the task of imposing a presumptive sentence when the Alaska Revised Criminal Code was still relatively new, his failure to specify the precise standards that he used in determining the extent to which Juneby's sentence should be increased as a result of this aggravating factor is not surprising. Certainly, it would be incorrect to hold that Judge Van Hoomissen abused his discretion by failing to adhere to standards that had not yet been established when he imposed the sentence. Nevertheless, we believe that in the absence of an affirmative indication in the record that the sentencing court correctly evaluated the evidence presented concerning the aggravating factor of physical injury to Juneby's victim, this issue must be remanded for redetermination consistent with the analysis we have set forth herein.

B. *Deliberate Cruelty as an Aggravating Factor*

Judge Van Hoomissen additionally concluded that Juneby's conduct toward V.W. manifested deliberate cruelty. AS 12.55.155(c)(2). The sole basis relied upon by the judge in finding deliberate cruelty was the force used by Juneby to overpower V.W. at the outset of his assault. In order to decide whether the sentencing court's ruling was correct, we must determine the meaning of "deliberate cruelty" as the term is used in AS 12.55.155(c)(2). Webster's Dictionary defines the word cruelty to mean: "(1) the quality or condition of being cruel ...." The word cruel is, in turn, defined as follows:

(1) deliberately seeking to inflict pain and suffering; enjoying other's suffering; without mercy or pity ....

The word cruelty thus denotes the infliction of pain or suffering for its own sake, or for the gratification derived therefrom. We think that, in accordance with this common definition, the term "deliberate cruelty," as used in AS 12.55.155(c)(2) must be restricted to instances in which pain—whether physical, psychological, or emotional—is inflicted gratuitously or as an end in itself. Conversely, when the infliction of pain or injury is merely a direct means to accomplish the crime charged, the test for establishing the aggravating factor of deliberate cruelty will not be met.

When this definition is applied to the present case, we believe that it is questionable whether the evidence considered by the sentencing judge would properly lead to the conclusion that the injuries suffered by V.W. resulted from deliberate cruelty on Juneby's part.[30] At Juneby's sentencing, neither the prosecution nor the defense presented the court with any argument concerning the appropriate definition of deliberate cruelty; Judge Van Hoomissen, in finding that the aggravating factor of deliberate cruelty had been established, gave no explanation of the standard that he applied to reach his conclusion. The definition of deliberate cruelty that we have adopted has been announced for the first time in this opinion; it is apparent that Judge Van Hoomissen did not rely on a similar definition in concluding that this aggravating factor had been established. The question of whether the aggravating factor of deliberate cruelty has been established by clear and convincing evidence is essentially a factual one. Despite our reservations about the sufficiency of the evidence to meet the "clear and convincing" test, we believe that this question is sufficiently close to require that it be addressed initially upon remand by the sentencing judge; his determination as to whether deliberate cruelty has been shown should be based on the definition of the term that we have adopted.

C. *Most Serious Conduct as an Aggravating Factor*

Judge Van Hoomissen found as a third aggravating factor, under AS 12.55.-

---

**30.** We do not imply that the nature and extent of the injuries or the manner in which they were inflicted should not be considered as circumstantial evidence of the defendant's motivation. Clearly, the sentencing judge is enti- tled to consider such circumstances in determining whether the defendant acted with deliberate cruelty or, on the other hand, solely to accomplish his criminal objective.

155(c)(10), that Juneby's sexual assault of V.W. "was among the most serious conduct included in the definition of the offense . . . ." We believe that the evidence in the record falls short of supporting the sentencing court's conclusion.

■ We begin by noting that Judge Van Hoomissen proceeded on the assumption that the reference in AS 12.55.-155(c)(10) to "the most serious conduct included in the definition of the offense" simply meant that, among the four alternative types of conduct included within the definition of sexual assault in the first degree under AS 11.41.410(a),[31] the type with which Juneby was charged—sexual penetration without consent, under subparagraph (1) of AS 11.41.410(a)—was by definition the most serious type of first degree sexual assault. Under this theory, Judge Van Hoomissen apparently viewed all sexual assaults falling within the definition of AS 11.41.410(a)(1) as involving conduct intrinsically more serious than the conduct defined as first degree sexual assault under the three other subparagraphs of AS 11.41.-410(a). Following this reasoning, the judge concluded that the aggravating factor of "most serious conduct" under AS 12.55.-155(c)(10) had been established based solely upon the fact that Juneby was charged and convicted under subparagraph (1) of AS 11.41.410(a).

We find Judge Van Hoomissen's interpretation of the aggravating factor defined in AS 12.55.155(c)(10) to be mistaken. All of the categories contained within the definition of sexual assault in the first degree under AS 11.41.410(a)(1)–(4) constitute the same offense for legal purposes. All four subparagraphs are treated as comprising the same offense; all are categorized as class A felonies. Nothing contained in the statutory language of AS 11.41.410 or the legislative history of that provision suggests that the type of conduct listed in any one of the statute's four subparagraphs was meant to be inherently more serious than any of the others. To the contrary, the grouping of these four separate sets of conduct together under the same criminal heading, with identical classifications as class A felonies, is a forceful indication of the legislature's conclusion that all four subparagraphs were meant to be viewed as involving equally serious conduct.

■ Moreover, the legislative history of AS 12.55.155(c)(10) makes it clear that the drafters of this provision intended that the determination of whether an offender's conduct "was among the most serious conduct included in the definition of that offense" was to be based on an assessment of the specific facts of each case, viewed in relation to the most serious potential conduct constituting the offense charged.[32]

31. Included in the definition of sexual assault in the first degree under AS 11.41.410(a)(1)–(4) are four separate means by which the crime can be committed. Under subparagraph (1), the provision with which Juneby was charged, a person commits sexual assault in the first degree if he engages in sexual penetration with another person without that person's consent. This provision is akin to the common law definition of rape. Under subparagraph (2), attempted rape resulting in serious physical injury to another person is included. Subparagraph (3) defines the sexual penetration of a person under 13 years of age by a person 16 years of age or older as constituting sexual assault in the first degree. Finally, under subparagraph (4), sexual penetration by a person 18 years of age or older with a minor who is his son or daughter or who is entrusted by law to his care is also brought within the definition of first degree sexual assault.

32. As stated in the commentary to AS 12.55.-155(c)(10) and (d)(9):

Under subsections (c)(10) and (d)(9) a presumptive term may be aggravated or mitigated if the conduct constituting the offense was among the most or least serious conduct included within the definition of the offense. For example, if the defendant was convicted of a felony two years earlier, and is now being sentenced for the theft of $24,999, theft in the second degree, a class C felony, the fact that the conduct constituting the offense was among the most serious conduct included in theft in the second degree may aggravate the presumptive term.

Commentary on the Alaska Revised Criminal Code, *supra* at 161.

■ Judge Van Hoomissen did, alternatively, indicate that he would find Juneby's crime to fall within the category of the most serious conduct even if his interpretation of AS 12.55.155(c)(10) was incorrect. As a basis for this conclusion, the judge articulated several grounds. He emphasized that Juneby had no prior contact with his victim; he gave great weight to the fact that Juneby's rape was committed in V.W.'s own home; he emphasized the injuries suffered by V.W., as well as the violent acts on Juneby's part, which he had found to constitute deliberate cruelty; finally, he pointed out that Juneby did not terminate his rape of V.W. voluntarily, but that he had fled when another person knocked at V.W.'s door. We believe that the various factors articulated by Judge Van Hoomissen are not sufficient to support a finding, by clear and convincing evidence, that Juneby's conduct was among the most serious included in the definition of the offense with which he was charged.

Because Judge Van Hoomissen had separately determined that Juneby's violent conduct and the resulting injuries sustained by V.W. fell within the definition of deliberate cruelty, when the judge relied on Juneby's violent acts to conclude that his conduct was among the most serious for the offense, he was plainly taking into account facts that had already been given weight as a separate aggravating factor. The problem created by such a determination is self-evident. By basing his finding of the aggravating factor of "most serious conduct" pursuant to AS 12.55.155(c)(10) on circumstances that had already independently been relied on to establish another aggravating factor, the sentencing judge was, in effect, justifying an additional increase in Juneby's sentence for conduct that had already been used as a basis to increase the sentence once before. In this manner, Juneby's offense could be doubly aggravated, and his sentence could be twice increased, for precisely the same acts.

A closely related problem with respect to the determination that Juneby's conduct was among the most serious included in the definition of the offense stems from the emphasis placed by Judge Van Hoomissen on the fact that Juneby's rape was committed in V.W.'s home. The judge placed considerable weight on the fact that Juneby had invaded the sanctity of his victim's home to commit his crime. Had Juneby been charged only with the crime of sexual assault in the first degree, his decision to commit the sexual assault within the privacy of his victim's home might properly be considered a significant factor bearing on the seriousness of the conduct included in the sexual assault. However, in this case, it is essential to recognize that Juneby was separately charged with and convicted of burglary in the first degree for unlawfully remaining in V.W.'s home with the intent to commit the sexual assault; the court imposed a separate sentence for the burglary. Juneby had thus been separately punished for his act of violating V.W.'s privacy by entering her home.

■ The judge's finding that Juneby's sexual assault was the most serious within the definition of the offense, because it was based in significant part on consideration of conduct for which Juneby had been separately convicted and sentenced, amounted to punishing Juneby twice for the same conduct: first, by imposing the sentence for burglary; second, by aggravating his presumptive term for sexual assault.

■ The language of AS 12.55.155(e) is highly relevant to this aspect of the sentencing judge's decision. This section provides, in part:

> If a factor in aggravation is a necessary element of the present offense, that factor may not be used to aggravate the presumptive term . . . .

Juneby's unlawful occupation of V.W.'s home with intent to commit rape was not a necessary element of the crime of sexual assault; it was, however, a necessary element of the burglary, a crime of which he was simultaneously convicted. The policy underlying AS 12.55.155(e)—that is, to avoid double punishment for the same conduct—clearly applies here. Because of the separate burglary conviction and sentence,

we conclude that Juneby's unlawful entry of V.W.'s house should not properly have been relied upon by the court in finding that Juneby's sexual assault was among the most serious within the definition of the offense.[33]

The conclusion that Juneby's conduct amounted to the most serious conduct included in the definition of the offense poses one additional problem of significant proportions. At the time of sentencing, the prosecution presented the sentencing court with virtually no evidence to support its claim that Juneby's conduct could be considered to fall within this aggravating factor. Viewing the totality of the circumstances, we do not think that Juneby's offense, though perhaps to some extent aggravated, was so egregious as to fall within the category of the most serious conceivable conduct for the offense. It is undeniable that Juneby committed a highly serious offense, one in which his victim was subjected to pain, humiliation, and both physical and psychological trauma. Yet the seriousness of a first degree sexual assault such as Juneby's is to a great extent already recognized by the classification of the offense as a class A felony, the most serious category of classified offenses created by the legislature in the Alaska Revised Criminal Code. Additional recognition of the seriousness of the offense and of the fact that it is regarded as intolerable under prevailing societal norms is found in the legislatively mandated presumptive term of ten years' imprisonment. As abhorrent as crimes such as Juneby's may be to all civilized persons, we cannot ignore the fact that the Alaska Legislature, through adoption of the presumptive sentencing statutes of the revised code, has clearly indicated that in cases such as this, sentences deviating from the presumptive and approaching the maximum for the offense will be appropriate only in those rare instances where the conduct of the offender is so highly aggravated that it qualifies as being among the most extreme and egregious of sexual assaults.

Evaluating this case realistically, we note that Juneby did not carry or pretend to carry any weapon; he did not threaten his victim with deadly force; though V.W. fled when Juneby's attempts at rape were interrupted by a knock at the door, Juneby apparently made no attempt to stop her. Juneby's sexual assault appears to have been committed on impulse and not to have been planned. Despite the substantial and inexcusable violence used by Juneby to subdue his victim, once V.W. was forced into submission, Juneby's conduct toward her was not inordinately violent. Although, in the course of his assault, Juneby requested his victim to perform fellatio upon him, when she refused to do so he was passive and did not insist that she carry through with the act. Finally, the total length of Juneby's assault was relatively brief. In enumerating these factors, we do not suggest that we consider them as mitigating the seriousness of Juneby's crime. To the contrary, we believe Juneby's own assertion that his crime was among the least serious within the definition of the offense to be frivolous. The point that we make is that, while this crime may not accurately be described as a mitigated incident of rape, or sexual assault in the first degree, neither does it fall at the other end of the spectrum. On balance, consideration of the totality of the circumstances of this offense leaves us with the firm impression that, but for the injuries inflicted upon Juneby's victim, this crime may reasonably be considered to fall far closer to the middle-ground, or norm, of conduct for the offense

---

**33.** We recognize that the same circumstances may often form the basis for two or more aggravating or mitigating factors. In such cases, sentencing courts should make specific findings as to all aggravating or mitigating factors established by the evidence. However, when several aggravating or mitigating factors are based on precisely the same conduct and intent, they should be treated by the court as merging, and the least significant factors should be deemed included in the most significant. The presumptive sentence can then be adjusted based upon consideration of the most significant factor. The record in such cases should affirmatively reflect that multiple factors based on the same conduct and intent were not given separate and independent weight in adjusting the presumptive term.

charged than to either the most serious or least serious extreme.[34] It is precisely for this type of case, one that is fairly characteristic in its class and neither mitigated nor aggravated, that our legislature has mandated a specific presumptive term.

### D. *Reasonableness of Juneby's Sentence in Light of Prior Alaska Sentence Appeals*

In seeking to support the total sentence imposed in this case as reasonable, the state has argued strenuously that a number of sentence appeals from convictions of rape have upheld sentences in the range of fifteen years or greater. Arguing to the contrary, Juneby maintains that the cases relied upon by the state are factually distinct from his own case; he goes on to cite a number of other sentence appeals in which high sentences for rape have been disapproved, or in which lower sentences have been approved.

The cases relied upon by both parties were decided before enactment of the Alaska Revised Criminal Code and its presumptive sentencing provisions. Consequently,

reliance by the parties on these cases is, in our view, misplaced.

■ We do not believe that a sentence imposed before enactment of the revised code can be accurately compared with or equated to a sentence presumptively imposed. Of special significance in this regard is the fact that, with adoption of the revised code, legislation permitting the early release of prisoners on parole was repealed in all cases involving presumptive sentencing. The realistic impact of this change must be recognized.

Before enactment of the Alaska Revised Criminal Code, in the absence of a specific order to the contrary, sentenced prisoners were eligible for early release on parole, even on second or subsequent felony convictions. By contrast, an individual sentenced under Alaska's presumptive sentencing statutes now cannot be paroled.[35] At most, prisoners presumptively sentenced are entitled to an allowance for "good time," totalling one day of credit for three days served.[36] Thus, a person sentenced under the presumptive sentencing statutes will be required to serve at least seventy-five per cent of the term imposed, even if he is a

---

**34.** A number of rape cases considered on appeal by the Alaska Supreme Court have involved factual situations substantially more aggravated on the whole than the circumstances involved in Juneby's case, thus forcefully illustrating the inappropriateness of categorizing Juneby's conduct as being among the most serious conduct within the definition of the offense for which he was convicted. *See, e.g., Tuckfield v. State,* 621 P.2d 1350 (Alaska 1981) (rape committed in a secluded staircase of a public building; the defendant battered his victim's head repeatedly into a concrete floor until she was unconscious, inflicting lasting injuries; after the defendant completed his rape, he left his victim on the staircase, with the knowledge that her chances of being found and receiving medical attention were remote); *Helmer v. State,* 616 P.2d 884 (Alaska 1980) (a forcible rape of a 14-year old committed "in a most brutal manner," after which the defendant repeatedly struck his victim about the head with an iron poker in a calculated attempt to kill her, ultimately inflicting injuries which caused the victim to lose an eye); *Lacy v. State,* 608 P.2d 19 (Alaska 1980) (defendant raped one woman and attempted to rape another woman, while kidnapping both); *Mallott v. State,* 608

P.2d 737 (Alaska 1980) (forcible rape of three-year-old girl); *Tate v. State,* 606 P.2d 1 (Alaska 1980) (rape by an offender on bail with a lengthy prior record); *Wikstrom v. State,* 603 P.2d 908 (Alaska 1979) (defendant forced his victim to commit vaginal, anal, and oral intercourse, in addition to which he choked her gratuitously and inserted a metal object in her vagina, inflicting injuries); *Torres v. State,* 521 P.2d 386 (Alaska 1974) (defendant raped a 14-year-old girl, having previously been convicted for lewd and lacivious acts upon an eight-year-old and while on appeal bond from a ten-year sentence).

**35.** *See* AS 33.15.180(a) and (c). The provisions of this section have been implemented by the Alaska Board of Parole. Thus, Parole Board Regulation § .025 provides, in relevant part:

(e) A prisoner convicted and sentenced in accordance with AS 12.55.125(c)(1), (c)(2), (c)(3), (d)(1), (d)(2), (e)(1), (e)(2), [presumptive sentencing provisions] is not eligible to be considered for discretionary parole by the Board.

**36.** *See* AS 33.20.010.

model prisoner. If the person fails to abide by institutional regulations, he can expect to serve his full term. Viewed realistically, then, a prison sentence imposed prior to enactment of the Alaska Revised Criminal Code is by no means equivalent to a sentence presumptively imposed; a presumptive term of ten years must be regarded as significantly more severe than a ten-year sentence imposed under prior law, when early parole in cases involving lengthy sentences was the order of the day.[37]

Even if the presumptive sentencing statutes had not drastically altered the practical significance of a set term of incarceration by eliminating eligibility for parole, the reliance placed by the parties on sentence appeals decided under prior law would still be unwarranted. It may, indeed, be true that before adoption of the presumptive sentencing statutes sentences of fifteen or twenty years for crimes such as Juneby's were often approved on appeal. The state's assertion of this argument, however, entirely overlooks the substantial changes enacted by the legislature in the presumptive sentencing provisions. These changes were intended to be mandatory, and we are bound to abide by them, as are our sentencing courts. As to many offenses, the changes contained in the presumptive sentencing statutes will result in the imposition of uniformly higher sentences for second and subsequent felony offenders. As to some offenses, however, the opposite will inevitably be the result, and offenders will be presumptively sentenced to terms uniformly lower than sentences commonly imposed before enactment of the revised code. If first degree sexual assaults fall into this latter category, as it appears they might, it

should be clear that change must be sought through amendment by the legislature, and not by straining the interpretation and application of the current presumptive sentencing statutes in order to maintain consistency with past sentencing practices.

In short, we find little practical utility in attempting to gauge the appropriateness of a presumptive sentence imposed under the revised code by comparison with the results of sentence appeals decided under prior law. We decline the request of both the state and the appellant to assess the reasonableness of the sentence imposed in this case by recourse to comparison with prior decisions.

### E. *Additional Issues*

■ Our conclusions thus far do not entirely resolve the issues presented. At his sentencing, Juneby asserted, and the state conceded, that one mitigating factor existed. Pursuant to AS 12.55.155(d)(8), Juneby's offense was mitigated by the fact that his prior felony conviction was for an offense of a less serious class than his present offense. Although Judge Van Hoomissen expressly acknowledged the existence of this mitigating factor, he proceeded to impose a maximum sentence for Juneby's conviction of sexual assault, offering no explanation of his reasons for apparently disregarding this mitigating factor. Indeed, Judge Van Hoomissen, although making minimal findings as to the existence of aggravating and mitigating circumstances, failed to explain the importance, or lack of importance, of any factor in terms of its impact on his ten-year increase of the presumptive term provided for by law. AS 12.55.155(f) expressly addresses the need for

---

**37.** Data compiled in Alaska for the years 1970–1979 establish that approximately two-thirds of all prisoners sentenced for felony offenses (with the exception of prisoners sentenced to life terms) were actually released on parole before completing their full terms. The impact of parole on prisoners sentenced to long terms of incarceration was particularly great. More than 80 per cent of prisoners sentenced to serve terms in excess of three years were paroled prior to expiration of their terms. The

average prisoner released on parole served slightly more than one-third of the original term imposed. These statistics are based upon a report entitled *Parole Guidelines for Alaska, Supplemental Report Time Served Component*, published by the Alaska Board of Parole in September 1980. Data in the report were gathered by Bay Area Research Design Associates under contract with the Alaska Board of Parole. *See* particularly *Id.* at 7, Table R9, and 10, Table R12.

factual findings with respect to aggravating and mitigating factors, stating, in pertinent part: "All findings [relating to factors in aggravation and factors in mitigation] must be set out with specificity." The rationale for the requirement of specific findings by the sentencing court is explained in the commentary to subsection (f):

> To preserve the rights of both parties on appeal, the subsection requires that the judge specifically set forth decisions with respect to aggravating or mitigating factors on the record.[38]

We believe that the provisions of subsection (f) must be read to require more than a *pro forma*, conclusory statement that an aggravating or mitigating factor has or has not been shown by clear and convincing evidence. Such a finding is of little utility in preserving the rights of the parties in a sentence appeal. We conclude that subsection (f)'s requirement that findings "be set out with specificity" calls for sentencing judges to include, in their remarks on the record, the following specific information: (1) the specific factors in aggravation and in mitigation found to have been established by clear and convincing evidence; (2) the evidence upon which the court has relied in finding the existence of aggravating or mitigating factors; (3) an explanation of the weight given by the court to each aggravating or mitigating factor, and the relative importance of each factor in comparison with other aggravating or mitigating factors established; and (4) an evaluation of the totality of the aggravating and mitigating factors in light of the *Chaney* criteria, as expressed in AS 12.55.005, in order to determine the amount by which the presumptive sentence for the particular offense should be adjusted.[39]

Accordingly, upon remand, the sentencing court shall make specific findings, in conformity with these requirements, concerning all alleged aggravating and mitigating factors, including the mitigating factor that Juneby's prior conviction was of a less serious class of felony than his present offense, pursuant to AS 12.55.155(d)(8).

## III. CONCLUSION.

We hold that Juneby's sentence must be vacated and that this case must be remanded for resentencing. Although we have found that Judge Van Hoomissen properly determined that an aggravating factor was established by proof of injuries sustained by Juneby's victim, it will be necessary for the court to reevaluate the extent of these injuries in light of the standards we have set forth herein and to determine what significance, if any, the injuries should have on adjustment of the ten-year presumptive term prescribed for Juneby's offense. We further decide that Judge Van Hoomissen must redetermine the question of whether Juneby's offense was aggravated by the factor of deliberate cruelty; in reevaluating this issue, the definition of deliberate cruelty adopted in this opinion should be applied by the sentencing judge to the facts of the present case. We also hold that the finding that Juneby's conduct was among the most serious included within the definition of the offense with which he was charged is unsupported by the record; upon remand, the sentencing judge shall not consider this factor in determining the extent to which Juneby's presumptive term should be adjusted. In resentencing Juneby, the court should make appropriate findings concerning all alleged aggravating and mitigating factors, as provided for herein.

---

**38.** Commentary on the Alaska Revised Criminal Code, *supra* at 161.

**39.** We believe that these requirements are necessary to fulfill the legislature's goal of assuring the parties of a record that is sufficient to preserve their right to an appeal. Moreover, because any adjustment of a presumptive sentence in light of aggravating or mitigating factors will call for an application of the *Chaney* criteria and will ultimately be subject to review under the familiar "clearly mistaken" standard, the findings that we have required are fully in keeping with the traditional requirement that sentencing decisions be carefully formulated and thoroughly explained.

In conclusion, we think it worthwhile to reiterate our belief that the legislature's paramount goals of eliminating disparity and achieving reasonable uniformity in sentencing can best be attained by adopting a measured and restrained approach toward adjustment of presumptive sentences for both aggravating and mitigating factors.

The sentence imposed by the superior court is VACATED and this case is REMANDED for resentencing.

COATS, J., not participating.