**James Donald SURRELLS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9458.**

Court of Appeals of Alaska.

Dec. 8, 2006.

---

David W. Miner, Seattle, Washington, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

This appeal raises the issue of whether the Sixth Amendment right to jury trial recognized in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), limits the superior court's authority to revoke the probation of a first felony offender who was sentenced, not under Alaska's presumptive sentencing law, but rather under former AS 12.55.125(k)(2).

Under Alaska's pre-March 2005 sentencing laws, first felony offenders convicted of class B and class C felonies were not subject to presumptive sentencing. Instead, their sentencing was governed by AS 12.55.125(k). Subsection (2) of this statute did not limit a defendant's total sentence (the combined total of suspended jail time and unsuspended jail time), but it did set a ceiling on the "time to serve" component of the sentence if the State failed to prove aggravating factors or extraordinary circumstances. This ceiling was 4 years if the defendant was convicted of a class B felony, and 2 years if the defendant was convicted of a class C felony.

In an earlier case, *State v. Gibbs,* 105 P.3d 145, 148 (Alaska App.2005), we held that a defendant sentenced under AS 12.55.125(k)(2) had no right to a jury trial under *Blakely* so long as the defendant's unsuspended term of imprisonment (the "time to serve" component of the defendant's sentence) did not exceed the applicable ceiling—even though the defendant received additional suspended time that put the defendant's total sentence above the ceiling.

But in *Gibbs,* we left one issue unresolved.[1] This issue arises when a first felony offender

---

1. *See Gibbs,* 105 P.3d at 148.

was sentenced under AS 12.55.125(k)(2), and the defendant's original sentence did not require proof of aggravators or extraordinary circumstances (*i.e.*, the "time to serve" component of the sentence did not exceed the statutory ceiling), but the superior court later revokes the defendant's probation and imposes enough of the defendant's previously suspended jail time to raise the defendant's total time to serve above the 2–year or 4–year ceiling.

The question is whether, under *Blakely*, the defendant is entitled to demand a jury trial on any facts that the sentencing judge may rely on when deciding to revoke the defendant's probation and impose the previously suspended jail time. For the reasons explained here, we hold that *Blakely* does not apply to this situation.

*The sentencing statute at issue in this case: former AS 12.55.125(k)(2)*

In 1999, James Donald Surrells was convicted of second-degree robbery, a class B felony.[2] Because Surrells was a first felony offender, and because Alaska's pre–2005 sentencing law did not prescribe a presumptive term of imprisonment for first felony offenders convicted of class B felonies, Surrells's sentencing range was governed by two statutes: AS 12.55.125(d) and former AS 12.55.125(k)(2).

AS 12.55.125(d) declares that the sentencing range for class B felonies is 0 to 10 years' imprisonment. And former AS 12.55.125(k)(2) established a limitation on sentencing judges' authority to sentence first felony offenders within this 0– to 10–year range.

Under AS 12.55.125(k)(2), first felony offenders who were not subject to presumptive sentencing—*i.e.*, first felony offenders convicted of a class B or class C felony—"[could] not be sentenced to a term of unsuspended imprisonment ... exceed[ing] the presumptive term [specified] for a second felony offender convicted of the same crime" unless the sentencing judge found:

by clear and convincing evidence that an aggravating factor [listed in] AS 12.55.155(c) [was] present, or that circumstances exist[ed] that would warrant a referral to the three-judge [sentencing] panel under AS 12.55.165.

We construed this sentencing statute in *Cook v. State*, 36 P.3d 710 (Alaska App.2001), and in *State v. Gibbs*, 105 P.3d 145 (Alaska App.2005), and we examined the constitutionality of the statute (so construed) in *Dayton v. State*, 120 P.3d 1073 (Alaska App.2005).

In *Cook*, 36 P.3d at 730, and in *Gibbs*, 105 P.3d at 148, we held that AS 12.55.125(k)(2) did not limit a first felony offender's total term of imprisonment. Rather, the statute limited only the "time to serve" component of a first felony offender's sentence (in the absence of aggravating factors or extraordinary circumstances). And in *Dayton*, 120 P.3d at 1079–1083, we upheld the constitutionality of this statute, so construed.

At the time of Surrells's offense, the presumptive term for a second felony offender convicted of a class B felony was 4 years' imprisonment.[3] Thus, under AS 12.55.125(k)(2), although Surrells's total sentence (his unsuspended term of imprisonment plus his suspended term of imprisonment) could be as high as 10 years (the maximum penalty for class B felonies), the unsuspended portion of Surrells's sentence—*i.e.*, his "time to serve"—could not exceed 4 years unless the sentencing judge found one or more of the aggravating factors listed in AS 12.55.155(c), or unless the sentencing judge found extraordinary circumstances as defined in AS 12.55.165.

(This latter statute, AS 12.55.165, is a "safety valve" provision for cases in which a felony defendant is subject to a presumptive term of imprisonment. The statute authorizes a sentencing judge to refer the defendant's case to the statewide three-judge sentencing panel—a special body that is authorized to sentence a defendant outside the normal strictures of the presumptive sentencing law—if the case presents extraordinary circumstances. The statute lists two

---

2. AS 11.41.510.

3. Former AS 12.55.125(d)(1) (pre-March 2005 version).

types of extraordinary circumstances: (1) if the sentencing judge finds by clear and convincing evidence that manifest injustice would result from failure to consider an aggravating or mitigating factor that is not listed in AS 12.55.155(c)-(d), or (2) if the sentencing judge finds that manifest injustice would result from imposition of the presumptive term, even after the sentencing judge has adjusted the presumptive term to the extent of the authority granted by AS 12.55.155(a) based on the aggravating and mitigating factors listed in AS 12.55.155(c)-(d). See *Kirby v. State,* 748 P.2d 757, 762 (Alaska App.1987), construing this statute.)

*Surrells's initial sentence, and the later modification of that sentence when the superior court revoked Surrells's probation in 2001*

At Surrells's original sentencing hearing in 1999, the State alleged four aggravating factors under AS 12.55.155(c): (c)(1)—that a person (other than an accomplice) was injured as a direct result of Surrells's conduct; (c)(4)—that Surrells used a dangerous instrument when committing the robbery; (c)(5)—that Surrells knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance; and (c)(10)—that Surrells's conduct was among the most serious within the definition of second-degree robbery (both because Surrells employed a dangerous instrument and because he caused serious physical injury to the victim).

It appears that none of these proposed aggravators was *Blakely*-compliant; that is, none of the four aggravators was based on Surrells's prior criminal convictions, or stemmed directly from the facts admitted by Surrells when he entered his plea. In fact, Surrells actively disputed all four of the State's proposed aggravators.

Superior Court Judge Larry D. Card found that the State had proved all four aggravating factors. Thus, under former AS 12.55.125(k)(2), Judge Card was authorized to sentence Surrells to more than 4 years to serve.

However, Judge Card did not exercise this authority. Instead, he imposed a sentence that would have been lawful even if the State had failed to prove aggravating factors or extraordinary circumstances. Surrells received 6 years with 4 years suspended—*i.e.,* 2 years to serve.

Under the terms of the superior court's judgement, Surrells was placed on probation for 5 years following his release from prison.

In 2001, Judge Card revoked Surrells's probation and imposed 2 years of the previously suspended jail time. After serving this additional jail time, Surrells had served a total of 4 years' imprisonment, and he had a remaining 2 years of suspended jail time.

In January 2005, the State again petitioned to revoke Surrells's probation. Three weeks later, Surrells filed a motion seeking a "correction" of his sentence, and asking the superior court to release him from custody and absolve him of all further probation.

Surrells's argument was based on the Sixth Amendment right to jury trial as construed by the United States Supreme Court in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Surrells acknowledged that, under former AS 12.55.125(k)(2), the superior court had the authority to impose his original sentence—6 years with 4 years suspended—even in the absence of aggravating factors. That is, Surrells acknowledged that his original sentence did not violate *Blakely. See State v. Gibbs,* 105 P.3d at 148.

Surrells also implicitly conceded that the amended sentence he received in 2001 (effectively, 6 years with 2 years suspended) did not violate *Blakely* either—since Judge Card could have imposed up to 4 years of time to serve when he initially sentenced Surrells, even in the absence of aggravating factors or extraordinary circumstances.

However, Surrells argued that there *would* be a *Blakely* violation if the superior court granted the State's current petition to revoke his probation, and if the superior court then decided to impose any portion of Surrells's remaining 2 years of suspended incarceration.

Surrells contended that the superior court could not impose any more of Surrells's pre-

viously suspended jail time without violating Surrells's right to jury trial under *Blakely*. Surrells noted that he had already served 4 years—the ceiling specified in former AS 12.55.125(k)(2) for cases where no aggravating factors or extraordinary circumstances were proved. Based on this fact, and based on the fact that Surrells had not received a jury trial on the four aggravating factors that were litigated at his original sentencing hearing, Surrells asserted that the superior court had no authority to impose any portion of Surrells's remaining 2 years of suspended jail time. Surrells asked the superior court to "discharge [him] from further service of [his] sentence".

In the alternative, again based on *Blakely*, Surrells asked the superior court to (1) grant him a jury trial as to all post-conviction facts that the State intended to rely on at the probation revocation hearing, and to (2) require the State to prove these facts beyond a reasonable doubt.

Judge Card initially denied all of Surrells's requests—primarily because the judge concluded that Surrells was seeking a retroactive application of *Blakely*, and because the judge further concluded that *Blakely* did not apply retroactively.

However, at the disposition hearing, Judge Card indicated that he had changed his mind about *Blakely*. The judge stated that "if [he were] to strictly follow *Blakely*, Mr. Surrells would be entitled to a jury trial" before any more imprisonment was imposed—because Surrells had already served 4 years in prison, an amount of imprisonment equal to the presumptive term specified for second felony offenders convicted of the same offense. Judge Card then stated that, even though Surrells might be entitled to a jury trial, "[it is] impractical for this court to order up a jury. There is no provision [for such a procedure] under our law. . . . I am at a loss as to what to do."

After a little further reflection, Judge Card announced that he would fashion his disposition order so as to moot the *Blakely* issue: he did not order Surrells to serve any more jail time, but he instead returned Surrells to probation, with the 2 suspended years of imprisonment (less the amount of time that Surrells spent in jail awaiting his disposition hearing) still hanging over his head.

*Surrells's argument that, because of Blakely, the superior court lacks the authority to impose any more of his suspended jail time—and that, as a consequence, Surrells must now be released from probation*

Surrells concedes that neither his original sentence nor his 2001 probation revocation sentence violated *Blakely*—because, under former AS 12.55.125(k)(2), proof of aggravating factors or extraordinary circumstances was needed only if the superior court intended to sentence him to more than 4 years of unsuspended jail time. However, now that the superior court has imposed a total of 4 years to serve, Surrells argues that *Blakely* prohibits the superior court from imposing any more of his suspended jail time—because, if the superior court did that, Surrells's total time to serve would exceed the 4-year ceiling imposed by former AS 12.55.125(k)(2).

Surrells contends that, now that his total time served equals 4 years, "[f]urther punishment . . . is permissible only with proof of an aggravator [in compliance with *Blakely* ]." As we explained earlier in this opinion, none of the four aggravators litigated at Surrells's original sentencing hearing were based on prior criminal convictions, nor did they stem directly from the facts admitted by Surrells when he entered his plea. That is, none of these aggravators were *Blakely*-compliant.

(Surrells also argues that the superior court is barred from relying on these four aggravating factors for the additional reason that the aggravating factors were not charged in Surrells's indictment. We recently rejected the argument that, under *Blakely*, aggravating factors must be charged in the indictment and proved to the grand jury. *State v. Dague*, 143 P.3d 988 (Alaska App. 2006).)

Surrells's ultimate position is that, not only is the superior court barred from requiring him to serve any more jail time, but the superior court is also obliged to immediately discharge from further probation supervision.

Surrells points out that this Court has declared that probation without suspended jail time is "meaningless". *Figueroa v. State*, 689 P.2d 512, 514 (Alaska App.1984). See also *Franzen v. State*, 573 P.2d 55, 57 (Alaska 1978), and *Manderson v. State*, 655 P.2d 1320, 1324 (Alaska App.1983)—both holding that a sentence of probation without a corresponding suspended term of imprisonment is a nullity. Surrells argues that his probation, too, has now become "meaningless"—because, he contends, the *Blakely* decision effectively bars the superior court from imposing any further portion of his suspended jail time.

> *If a first felony offender is sentenced under AS 12.55.125(k)(2) and does not receive more time to serve than the presumptive term that would apply to a second felony offender convicted of the same crime, the right to jury trial recognized in Blakely v. Washington does not apply to the defendant's case—even when, because of later revocations of the defendant's probation, the superior court ultimately imposes more time to serve than the presumptive term for a second felony offender*

■ Surrells's central contention is that the right to jury trial recognized in *Blakely v. Washington* limits the superior court's authority to revoke a defendant's probation if the defendant is a first felony offender who was sentenced under former AS 12.55.125(k)(2).

It is clear—both from the wording of AS 12.55.125(k)(2), and from the construction that we gave the statute in *Cook* and *Gibbs*—that the *Blakely* right to jury trial would indeed be triggered if, at the defendant's *original* sentencing, the superior court wished to impose a sentence that included a "time to serve" component exceeding the presumptive term for a second felony offender convicted of the same crime. Under the statute, the superior court had no authority to impose such a sentence unless the State proved one or more of the aggravating factors listed in AS 12.55.155(c), or unless the State proved extraordinary circumstances as defined in AS 12.55.165. Thus, to the extent that the proposed aggravating factors or extraordinary circumstances hinged on issues of fact (other than the defendant's prior criminal convictions), a defendant would be entitled to demand that those factual issues be decided by a jury, and to demand that the facts be proved beyond a reasonable doubt.[4]

But, as explained above, Surrells's initial sentence—6 years with 4 years suspended—did not require proof of aggravating factors or extraordinary circumstances. AS 12.55.125(k)(2) did not restrict a defendant's total sentence (that is, the defendant's suspended time plus time to serve). Rather, the statute only restricted the "time to serve" component of the defendant's sentence.

Surrells's time to serve—2 years—was less than the 4-year presumptive term that would have applied to his case if he had been a second felony offender. Judge Card therefore had the authority to impose Surrells's original sentence of 6 years with 4 years suspended based on Surrells's guilty plea alone, even in the absence of aggravating factors or extraordinary circumstances. *Dayton*, 120 P.3d at 1078–1080; *Gibbs*, 105 P.3d at 148.

But even though there was no *Blakely* violation at Surrells's original sentencing—that is, even though Judge Card had the authority to impose 2 years to serve and an additional 4 years of suspended jail time—Surrells contends that *Blakely* limits Judge Card's authority to later revoke Surrells's probation and impose this suspended jail time. According to Surrells, this limitation was triggered when Judge Card revoked Surrells's probation in 2001 and imposed 2 years of the previously suspended jail time—thus increasing the "time to serve" component of Surrells's sentence to 4 years.

Surrells points out that if his probation is again revoked in the future, and if the superior court orders him to serve any further portion of the previously suspended jail time, the "time to serve" component of his sentence would then exceed 4 years. Surrells further points out that, under former AS 12.55.125(k)(2), as supplemented by the *Blakely* decision, the superior court would have been barred from imposing more than 4

---

4. *See, e.g., Tyler v. State*, 133 P.3d 686, 688–89 (Alaska App.2006).

years to serve at Surrells's *original* sentencing hearing in 1999 if the State failed to prove *Blakely*-compliant aggravating factors or extraordinary circumstances. From this, Surrells concludes that *Blakely* now bars the superior court from revoking his probation and imposing any of the remaining suspended jail time.

But the *Blakely* right to jury trial attaches only to issues of fact which, if decided against the defendant, will increase the defendant's potential maximum sentence. Thus, Surrells's *Blakely* argument rests on the implicit assertion that when a sentencing court revokes a defendant's probation and imposes some or all of the defendant's previously suspended jail time, the sentencing court is "increasing" the defendant's sentence for constitutional purposes. This is not true.

We addressed this point in *Reyes v. State,* 978 P.2d 635 (Alaska App.1999):

> It practically goes without saying—although the United States Supreme Court expressly said it in *United States v. DiFrancesco* [, 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980) ]—that the double jeopardy clause is not violated when a sentencing court revokes a defendant's probation and imposes a previously suspended prison term. In such circumstances, the defendant's sentence has not been "increased" because, from the beginning, it was understood that the defendant's imprisonment would remain suspended only if the defendant abided by the conditions of probation.
>
> . . .
>
> Since the *DiFrancesco* decision, most courts have held (either explicitly or implicitly) that when a defendant challenges a modification of their sentence on double jeopardy grounds, the double jeopardy issue must be resolved by examining the applicable sentencing statutes and deciding whether, from the beginning, the court was authorized to modify the sentence in that way.

*Reyes,* 978 P.2d at 639.

The United States Supreme Court reiterated this approach to the issue in *Ralston v. Robinson,* 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981). The Court declared that the rule prohibiting a post-sentencing increase in a defendant's sentence "simply does not apply when [the legislature] has provided a court with the power to modify a sentence in light of changed circumstances". 454 U.S. at 217 n. 10, 102 S.Ct. at 244 n. 10.

Under Alaska law, when a sentencing court suspends a portion of a defendant's term of imprisonment and places the defendant on probation, it is understood that if the defendant violates the probation conditions, the sentencing court has the authority to order the defendant to serve the previously suspended jail time. Thus, there is no "increase" in the defendant's sentence when, based on the defendant's post-sentencing conduct, the sentencing court finds good cause to revoke the defendant's probation and impose some or all of the previously suspended term of imprisonment.

(For similar reasons, a defendant has no right to trial by jury or to proof beyond a reasonable doubt at a probation revocation hearing—even when the defendant's alleged violation of probation constitutes a new, separately punishable crime. *See Gilligan v. State,* 560 P.2d 17, 19 (Alaska 1977) ("A probation revocation hearing is not a criminal proceeding in the sense that indictment, jury trial[,] and proof beyond a reasonable doubt are required[.]"); *Adams v. Ross,* 551 P.2d 948, 950 (Alaska 1976); *Trumbly v. State,* 515 P.2d 707, 709 (Alaska 1973); *Snyder v. State,* 496 P.2d 62, 63 (Alaska 1972); *Hernandez v. State,* 691 P.2d 287, 290 (Alaska App.1984).)

Surrells's case does not involve any potential increase in his maximum sentence. The sentence that Surrells received at his 1999 sentencing hearing—6 years with 4 years suspended—was authorized under Alaska law, even in the absence of aggravating factors or extraordinary circumstances. And, as we have just explained, a defendant's sentence is not increased (for constitutional purposes) when the sentencing court later revokes the defendant's probation and imposes some or all of the defendant's previously suspended jail time.

The *Blakely* right to jury trial applies only to issues of fact that will increase the defendant's potential maximum sentence for a

criminal offense. It is true that Surrells faces a potential maximum of 6 years to serve if he again violates his probation and if the superior court determines that his misconduct warrants imposition of his remaining 2 suspended years of imprisonment. But Surrells has faced that same conditional maximum sentence ever since he was originally sentenced. Under the pertinent Alaska sentencing statutes, the superior court was authorized to impose that original sentence—6 years with 4 years suspended—without proof of aggravating factors or extraordinary circumstances. And, under both Alaska and federal law, the revocation of a defendant's probation does not constitute an "increase" in the defendant's sentence for constitutional purposes.

Accordingly, the superior court has complete statutory authority to revoke Surrells's probation again in the future, and to impose some or all of Surrells's remaining 2 years of suspended imprisonment, even in the absence of *Blakely*-compliant aggravating factors or extraordinary circumstances.

*The relationship of this Court's Austin line of cases to the sentencing authority conferred by former AS 12.55.125(k)(2)*

Surrells argues that although the wording of the pertinent Alaska sentencing statutes may appear to authorize the superior court to revoke his probation and impose his previously suspended jail time in an amount that brings his total time to serve above 4 years, even without proof of aggravating factors or extraordinary circumstances, nevertheless this Court's prior decisions concerning the sentencing of first felony offenders command a different result.

Surrells relies on the line of cases beginning with *Austin v. State*, 627 P.2d 657 (Alaska App.1981).

Our decision in *Austin* was aimed at addressing an anomaly created by the Alaska Legislature's decision to exempt most first felony offenders from presumptive sentencing. Under the pre–2005 version of Alaska's presumptive sentencing law, all defendants with at least one prior felony conviction were subject to a specified presumptive term of imprisonment, and the superior court was prohibited from sentencing the defendant to a term of imprisonment greater than the specified presumptive term unless the State proved aggravating factors or extraordinary circumstances. But first felony offenders convicted of a class B or class C felony were not subject to presumptive sentencing; thus, the superior court had complete authority to sentence the defendant to any term of imprisonment (up to the maximum for that class of felony), even in the absence of aggravating factors or extraordinary circumstances.

Conceivably, under this statutory scheme, if a first felony offender and a second felony offender engaged in exactly the same criminal conduct, and if the State could not prove aggravating factors or extraordinary circumstances, the superior court could lawfully sentence the first felony offender to a more severe sentence than the second felony offender.

In *Austin*, this Court recognized that there would be instances where a first felony offender should properly receive a more severe sentence than a second felony offender convicted of the same crime. "[I]t is ... clear that the legislature did not intend ... that a first offender could *never* receive more time to serve than the presumptive [term] for a second offender, since the statute[s] easily could have been written to accomplish that result." *Austin*, 627 P.2d at 658 (emphasis added).

Nevertheless, to alleviate the potential for unfairly disparate sentences, this Court established the "*Austin* rule"—the rule that "[n]ormally a first [felony] offender should receive a more favorable sentence than the presumptive [term] for a second [felony] offender". 627 P.2d at 657–58. We declared that "this rule should be violated only in an exceptional case". 627 P.2d at 658.

In *Brezenoff v. State*, 658 P.2d 1359, 1362 (Alaska App.1983), we clarified that an "exceptional case" for *Austin* purposes was one in which substantial aggravating factors or extraordinary circumstances were present. And, to bring the *Austin* rule into closer conformity with the rules governing presumptive sentencing, we held in *Buoy v.*

*State*, 818 P.2d 1165, 1167–68 (Alaska App. 1991), that, for *Austin* purposes, aggravating factors or extraordinary circumstances had to be proved by clear and convincing evidence—the same standard that would apply to the proof of aggravating factors under AS 12.55.155(f), or to the proof of extraordinary circumstances under AS 12.55.165–175, in cases governed by presumptive sentencing.

However, soon after our decision in *Austin*, we clarified that, for purposes of assessing whether a first felony offender had received a "more favorable sentence" than a second felony offender, the *Austin* rule focused on the "time to serve" component of the defendant's sentence. *Tazruk v. State*, 655 P.2d 788 (Alaska App.1982). The *Tazruk* decision clarified that the *Austin* rule restricted a first felony offender's time to serve, but not a first felony offender's suspended jail time.

Like Surrells, the defendant in *Tazruk* was convicted of a class B felony.[5] A second felony offender convicted of the same offense would face a presumptive term of 4 years.[6] The defendant in *Tazruk* received a sentence of 8 years with 5 years suspended—*i.e.*, 3 years to serve.[7] On appeal, Tazruk argued that this sentence violated the *Austin* rule, but this Court rejected that argument:

> [I]n evaluating whether a sentence is in excess of the presumptive [term] which a second felony offender would receive, our primary focus [is] on [the unsuspended] portion of the sentence.... By that standard, the three years of imprisonment to which Tazruk is sentenced is less than the four years which a second felony offender would [presumptively] receive.... Tazruk's sentence does not violate the *Austin* rule.

*Tazruk*, 655 P.2d at 789.

This Court adopted the *Austin–Tazruk* sentencing rule under our common-law power to declare the law in the absence of governing legislation.[8] And, as we explained

(and held) in *Cook v. State*, 36 P.3d 710, 730 (Alaska App.2001), the legislature's subsequent enactment of AS 12.55.125(k)—later recodified as 125(k)(2)[9]—was intended to codify the *Austin–Tazruk* sentencing rule (with slight modifications).

Surrells's original sentence needed no special justification under AS 12.55.125(k)(2). But his case presents the issue of what limitations, if any, the *Austin–Tazruk* rule and its statutory successor, AS 12.55.125(k)(2), place on the superior court's authority to revoke a first felony offender's probation and impose jail time that was originally suspended.

In previous decisions, this Court has declared that when the superior court revokes the probation of a first felony offender, the court should not impose a total time to serve that exceeds the presumptive term for a second felony offender unless the overall circumstances of the case (the defendant's background, the facts of the original offense, plus the defendant's conduct while on probation) demonstrate that the defendant's case is more serious than that of a typical second felony offender convicted of the same offense:

> Before finding that an offender's probation violations justify a total sentence exceeding the applicable presumptive term for a second felony offender, the sentencing court must conclude that the offender's poor conduct on probation, when viewed in conjunction with all of the originally available sentencing information, renders the case even more serious—and therefore deserving of even greater punishment—than the case of a typical second felony offender committing a typical offense of the same class.

*Chrisman v. State*, 789 P.2d 370, 371 (Alaska App.1990).

█ Or, phrased another way, the relevant question in such cases is whether the totality of the circumstances—all the facts presented

---

**5.** *Tazruk,* 655 P.2d at 789.

**6.** *Id.*

**7.** *Id.*

**8.** *Dayton v. State,* 120 P.3d 1073, 1079 (Alaska App.2005); *State v. Gibbs,* 105 P.3d 145, 148 (Alaska App.2005).

**9.** *See* SLA 1999, ch. 54, § 11.

to the court at the original sentencing proceedings, plus all the facts presented to the court during the probation revocation proceedings—would have justified a sentence in excess of the *Austin* limit if this totality of circumstances had been known when the original sentence was imposed. *Luepke v. State*, 765 P.2d 988, 990–91 (Alaska App. 1988).

In *Witt v. State*, 725 P.2d 723, 724 (Alaska App.1986), this Court clarified that no particular aggravating factor need be proved in order to justify the imposition of a probation revocation sentence more severe than the presumptive term for a second felony offender. Rather, we declared that if a defendant's probation violations established that the defendant had unusually poor prospects for rehabilitation, this fact could be deemed an extraordinary circumstance justifying the imposition of a probation revocation sentence in excess of the normal *Austin* ceiling. 725 P.2d at 724. *See also Kriner v. State*, 798 P.2d 359, 361 (Alaska App.1990).

Nevertheless, based on the principles that this Court applied in *Chrisman, Luepke*, and *Witt*, Surrells argues that if a first felony offender has been sentenced under AS 12.55.125(k)(2), the superior court is obliged to find either aggravating factors or extraordinary circumstances before imposing a probation revocation sentence that exceeds the presumptive term for a second felony offender convicted of the same crime. And, because the superior court's sentencing authority hinges on proof of aggravating factors or extraordinary circumstances, *Blakely* guarantees the defendant's right to a jury trial on these factors or circumstances.

Surrells's argument is based on a misreading of our cases. Although this Court's decisions in *Chrisman, Luepke*, and *Witt* place a limitation on the sentencing discretion of superior court judges when they revoke the probation of first felony offenders who are not subject to presumptive sentencing, this limitation is in the nature of a benchmark sentencing rule—a rule that guides a sentencing judge's discretion within the fairly expansive sentencing authority granted by the legislature.

The crucial fact is that the sentencing of these offenders was *not* governed by the pre-March 2005 presumptive sentencing statutes. The Alaska Legislature imposed only one limitation on the sentencing of these first felony offenders: the sentencing statute that we discussed above, AS 12.55.125(k)(2). And, as we explained above, this statute restricted only the superior court's authority to impose time to serve on a first felony offender. The statute did not restrict the amount of suspended imprisonment that a first felony offender might receive. Moreover, the statute contained no restriction on the sentencing court's authority to revoke the defendant's probation and impose this suspended imprisonment.

It is true that this Court's decisions in *Chrisman, Luepke*, and *Witt* affected a judge's sentencing discretion when the judge was revoking a first felony offender's probation. We directed judges to consider whether the totality of the circumstances—the defendant's background, the defendant's original criminal conduct, and the defendant's subsequent conduct while on probation—showed that the defendant should receive a more severe sentence than the sentence that would be imposed on a typical second felony offender who engaged in typical conduct within the definition of the crime.

But this Court never held that, when revoking a first felony offender's probation, the judge had to make a formal finding of aggravating factors or extraordinary circumstances under the procedures specified in AS 12.55.155–175. In particular, this Court has never held that, at probation revocation proceedings, the sentencing court had to find aggravating factors or extraordinary circumstances by "clear and convincing evidence" as opposed to the "preponderance of the evidence" standard that normally applies at probation revocation hearings. (Compare *Buoy v. State*, 818 P.2d 1165, 1168 (Alaska App. 1991), where we held that the litigation of aggravating factors or extraordinary circumstances for purposes of the *Austin* rule at a first felony offender's *initial* sentencing was indeed governed by the "clear and convincing evidence" standard of proof.)

Nor did we suggest in *Witt* that the "extraordinary circumstances" demonstrated by the defendant's poor history on probation had to be referred to the statewide three-judge sentencing panel under AS 12.55.165–175.

(Under Alaska's presumptive sentencing laws, a single superior court judge has no authority to adjust a defendant's presumptive term of imprisonment based on extraordinary circumstances. If the sentencing judge believes that a case presents extraordinary circumstances, the judge is directed to refer the case to the statewide three-judge panel. *See* AS 12.55.165. Only the three-judge panel has the authority to make a final ruling on the existence of extraordinary circumstances, and only the three-judge panel has the authority to adjust the defendant's sentence based on extraordinary circumstances. *See* AS 12.55.175.)

As explained above, we held in *Witt* that a first felony offender's poor performance on probation could be deemed an "extraordinary circumstance" that, under the *Austin* rule, might justify the sentencing judge in imposing the defendant's previously suspended jail time in a total amount exceeding the normal *Austin* ceiling. If, as Surrells suggests, we meant that the sentencing judge's decision was governed by the same formal rules as the rules that apply in presumptive sentencing cases, then we would have required the sentencing judge to refer the defendant's probation revocation proceedings to the three-judge panel—the only judicial body authorized to adjust a sentence based on the existence of exceptional circumstances in presumptive sentencing cases.

But we did not suggest such a course of action in *Witt*, nor did we suggest that the sentencing judge somehow lost jurisdiction over the defendant's sentencing in these instances. Rather, our *Witt* decision assumed that the individual sentencing judge had the authority to make a finding of extraordinary circumstances.

The answer to this seeming conundrum lies in the fact that these cases were not governed by presumptive sentencing. Instead, the *Austin* line of cases used the presumptive sentencing rules by analogy—as

guidelines for a judge's exercise of discretion in non-presumptive sentencing cases. As we said in *Luepke,* a probation revocation sentence that exceeds *Austin* limits should be imposed only when the circumstances of the defendant's case *"would qualify* as statutory aggravating factors or ... *would justify* referral to the three-judge sentencing panel *if the defendant were subject to presumptive sentencing".* *Luepke,* 765 P.2d at 990 (emphasis added).

In *Chrisman, Luepke,* and *Witt,* we directed sentencing judges to evaluate a first felony offender's probation revocation sentence *by reference to* the aggravators listed in AS 12.55.155(c) and *by reference to* the concept of "extraordinary circumstances" defined in AS 12.55.165. But the fact remains that, under the pre-March 2005 version of Alaska's sentencing law, the formal rules governing presumptive sentencing cases did not apply to the sentencing of first felony offenders convicted of class B or class C felonies, nor to the revocation of their probation. Our decisions in *Chrisman, Luepke,* and *Witt* were intended to provide a benchmark to guide superior court judges when they exercised the greater sentencing discretion that Alaska law offered to judges in cases involving first felony offenders.

This conclusion is reinforced by the way in which our *Austin* cases defined the role of the statutory aggravating factors in the sentencing of first felony offenders who were not subject to presumptive sentencing.

As we recently explained in *Cleveland v. State,* 143 P.3d 977 (Alaska App.2006), Alaska's pre-March 2005 presumptive sentencing law was written so that the proof of any single aggravating factor was sufficient to authorize the sentencing judge to impose any sentence up to the statutory maximum. But in our *Austin* line of cases, we repeatedly declared that the presence of one or more aggravating factors did *not* necessarily mean that the "time to serve" component of a first felony offender's sentence could properly exceed the presumptive term that would apply to a second felony offender.

Even when one or more of the aggravating factors listed in AS 12.55.155(c) were present,

the ultimate question was whether these statutory aggravating factors showed that "the [first felony offender's] case [was] more serious—and therefore deserving of even greater punishment—than the case of a typical second felony offender committing a typical offense of the same class." *Chrisman*, 789 P.2d at 371. Accordingly, under *Austin*, the question was not merely the existence of statutory aggravating factors, but rather "the existence of *significant* statutor[y] aggravating factors". *Copeland v. State*, 70 P.3d 1118, 1127 (Alaska App.2003) (emphasis added), quoting *State v. Jackson*, 776 P.2d 320, 326 (Alaska App.1989).

We addressed this point of law in *Petersen v. State*, 930 P.2d 414 (Alaska App.1996):

As this court has repeatedly stated, the presence of aggravating factors does not necessarily justify a substantial departure from the presumptive terms established by the legislature. By analogy, proof of aggravating factors does not necessarily call for a sentence above the limit established in *Austin* for a first felony offender.... Having found [a statutory] aggravator ..., [a sentencing judge's] next task [is] to weigh that factor in light of the sentencing criteria codified in AS 12.55.005 to determine whether the presence of the aggravator show[s] [the defendant] to be an atypically serious offender or show[s] his crime to be more serious than a typical instance of [the charged crime]. *See Juneby v. State*, 641 P.2d 823, 833, 835 & n. 21 (Alaska App.1982), *modified on other grounds*, 665 P.2d 30 (Alaska App.1983) (in cases governed by presumptive sentencing, even when aggravating factors are proved, a sentencing court should be cautious when making adjustments to the prescribed presumptive term; any adjustment should be based on the sentencing criteria established in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970)).

*Petersen*, 930 P.2d at 439 (citation omitted).

This same rule applies at probation revocation sentencings under the pre-March 2005 sentencing law. As we explained above, the *Austin* rule allowed the superior court to sentence a first felony offender to a suspended term of imprisonment that potentially made the offender subject to a greater sentence than the presumptive term applicable to a second felony offender. However, under *Austin*, if the court later revoked the defendant's probation, the defendant "could properly be ordered to serve the balance of [the] originally suspended incarceration ... only if *significant* aggravating factors or extraordinary circumstances were found in his case." *Espinoza v. State*, 901 P.2d 450, 453 (Alaska App.1995) (emphasis added). See also *Bland v. State*, 846 P.2d 815, 817–18 (Alaska App. 1993), where this Court applied the same rule to a case where, at the probation revocation hearing, the defendant rejected continued probation and demanded that his remaining suspended term of imprisonment be imposed in its entirety.

Our handling of these two issues—allowing single sentencing judges to find extraordinary circumstances, and requiring that aggravating factors be "significant"—demonstrates that the probation revocation rules we announced in *Chrisman*, *Luepke*, and *Witt* are not formal requirements of Alaska's sentencing statutes. Rather, these rules are guidelines—guidelines designed to avoid unjustified sentencing disparity in cases not governed by the presumptive sentencing statutes. And because the rules announced in *Chrisman*, *Luepke*, and *Witt* are guidelines, the *Blakely* right to jury trial does not apply to them.

This Court has previously held that the *Blakely* right to jury trial does not apply to a sentencing judge's findings under such "benchmark" rules. For instance, in *Carlson v. State*, 128 P.3d 197, 204–05, 209–211 (Alaska App.2006), we held that *Blakely* does not apply to a judge's reasons for exceeding the *Page* benchmark sentencing range for second-degree murder. And in *Vandergriff v. State*, 125 P.3d 360, 362–63 (Alaska App. 2005), we held that *Blakely* does not apply to a judge's reasons for imposing consecutive sentences that total more than the maximum term for the defendant's single most serious offense under the *Neal/Mutschler* rule.

We reach the same conclusion here. The *Blakely* right to jury trial does not apply to the findings that a judge is obliged to make under *Chrisman*, *Luepke*, and *Witt* if,

when revoking the probation of a first felony offender, the judge wishes to impose total time to serve that exceeds the presumptive term for a second felony offender convicted of the same offense.

## Conclusion

We reject Surrells's argument that the superior court has no authority to impose any of the remaining 2 years of Surrells's suspended term of imprisonment (and that, as a consequence, Surrells must immediately be released from further probation). Rather, the judgement of the superior court is AFFIRMED. Surrells remains on probation, and he is subject to imposition of some or all of the remaining 2 years of suspended jail time if he violates the conditions of his probation.