Melvin OYOUMICK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9736.

Court of Appeals of Alaska.

June 6, 2008.

Leslie A. Hiebert, Assistant Public Advocate, and Joshua P. Fink, Public Advocate, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

This appeal presents several questions regarding the rules that govern the re-sentencing of first felony offenders under Alaska's pre–2005 sentencing law when their probation is revoked.

The defendant, Melvin Oyoumick, was convicted of attempted second-degree sexual abuse of a minor, a class C felony. Oyoumick was a first felony offender. Because no presumptive term was prescribed for first felony offenders convicted of class C felonies under the pre–2005 Alaska sentencing law, Oyoumick's sentencing was governed by former AS 12.55.125(k)(2)—the legislature's codification of the first-offender sentencing rule that was first announced by this Court in *Austin v. State,* 627 P.2d 657, 657–58 (Alaska App.1981).

Oyoumick initially received a sentence of 3 years' imprisonment with 2 years suspended—a sentence that did not require proof of aggravating factors under former AS 12.55.125(k)(2) because Oyoumick's time to serve did not exceed the 2–year presumptive term of imprisonment that would have applied to a second felony offender convicted of the same offense.[1]

After serving his 1–year prison term, Oyoumick was released on probation. In November 2004, the State petitioned the superior court to revoke Oyoumick's probation because a breath test administered by his probation officer showed that he was intoxicated. (Oyoumick's blood alcohol content was .119 percent.) The superior court ordered Oyoumick to obtain an alcohol assessment, but the court returned him to probation.

In April 2006, the State again petitioned the superior court to revoke Oyoumick's probation after he was found intoxicated on the streets of Anchorage. (His blood alcohol content was .263 percent.) At this point, Oyoumick decided to decline further probation, and he asked the superior court to impose a sentence consisting solely of time to serve. After hearing the parties' arguments regarding the proper sentence, the superior court ordered Oyoumick to serve the remaining 2 years of his sentence. This brought Oyoumick's total term of imprisonment to 3 years to serve—a sentence which, had it been imposed initially, would have required proof of aggravating factors under former AS 12.55.125(k)(2).

■ Oyoumick claims that this sentence violates his Sixth Amendment right to jury trial under *Blakely v. Washington,*[2] because he has now (following the revocation of his probation) received a sentence that would have required proof of aggravating factors had it been imposed initially.

(At Oyoumick's original sentencing, the judge found three aggravating factors under AS 12.55.155(c). However, these aggravating factors were not *Blakely*-compliant— that is, they did not rest on Oyoumick's prior convictions, nor were they conceded by Oyoumick during the sentencing proceedings.)

We addressed a similar situation in *Surrells v. State,* 151 P.3d 483 (Alaska App.2006). The defendant in *Surrells* was a pre-March 2005 first felony offender who initially re-

---

1. *See* former AS 12.55.125(e)(1) (pre-March 2005 version).

2. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

ceived a sentence that did not require proof of aggravating factors under former AS 12.55.125(k)(2); in other words, the defendant received no more time to serve than the presumptive term prescribed for a second felony offender convicted of the same offense. In *Surrells,* we held that the right to jury trial recognized in *Blakely* does not limit the superior court's authority to re-sentence such a defendant after the court revokes their probation—even if the defendant's new sentence exceeds the presumptive term that would apply to a second felony offender. *Id.* at 488–490.

Oyoumick argues that *Surrells* was wrongly decided. However, with one exception (which we discuss next in this opinion), Oyoumick's attacks on *Surrells* are cursory and unconvincing.

In previous decisions, this Court has declared that when the superior court revokes the probation of a first felony offender under the pre–2005 sentencing law, the court should not impose a total time to serve that exceeds the presumptive term for a second felony offender unless the overall circumstances of the case (the defendant's background, the facts of the original offense, and the defendant's conduct while on probation) demonstrate that the defendant's case is more serious than that of a typical second felony offender convicted of the same offense.[3]

■ Phrased another way, the relevant question facing the superior court in such cases is whether the totality of the circumstances—all the facts presented to the court at the original sentencing proceedings, plus all the facts presented to the court during the probation revocation proceedings—would have justified a sentence in excess of the *Austin* ceiling if this totality of circumstances had been known when the original sentence was imposed.[4]

In *Witt v. State,* 725 P.2d 723, 724 (Alaska App.1986), this Court clarified that no particular aggravating factor need be proved in order to justify the imposition of a probation revocation sentence more severe than the presumptive term for a second felony offend-

er. Rather, we declared that if a defendant's probation violations established that the defendant had unusually poor prospects for rehabilitation, this fact could be deemed an extraordinary circumstance justifying the imposition of a probation revocation sentence in excess of the normal *Austin* ceiling. 725 P.2d at 724; *see also Kriner v. State,* 798 P.2d 359, 361 (Alaska App.1990).

And in *Surrells,* we held that the *Blakely* right of jury trial does not apply to the superior court's finding of aggravating circumstances or extraordinary circumstances at a probation revocation hearing. 151 P.3d at 492–95.

■ In the course of our discussion of this point in *Surrells,* we declared that "this Court has never held that, at probation revocation proceedings, the sentencing court had to find aggravating factors or extraordinary circumstances by 'clear and convincing evidence' as opposed to the 'preponderance of the evidence' standard that normally applies at probation revocation hearings." *Id.* at 492. This statement was wrong. As Oyoumick points out in his brief, this Court squarely held in *Andrew v. State,* 835 P.2d 1251, 1254 (Alaska App.1992), "that, for *Austin* rule purposes, aggravating factors or extraordinary circumstances must be established by clear and convincing evidence . . . when they occur in the context of probation revocation proceedings."

Nevertheless, even with the standard of proof clarified as proof by "clear and convincing evidence", we stand by our conclusion in *Surrells* that

the probation revocation rules . . . announced in *Chrisman, Luepke,* and *Witt* are not formal requirements of Alaska's [pre–2005] sentencing statutes. Rather, these rules are guidelines—guidelines designed to avoid unjustified sentencing disparity in cases not governed by the presumptive sentencing statutes. And because the rules announced in *Chrisman, Luepke,* and *Witt* are guidelines,

---

**3.** *E.g., Chrisman v. State,* 789 P.2d 370, 371 (Alaska App.1990); *Witt v. State,* 725 P.2d 723, 724 (Alaska App.1986).

**4.** *Luepke v. State,* 765 P.2d 988, 990–91 (Alaska App.1988).

the *Blakely* right to jury trial does not apply to them.

*Surrells,* 151 P.3d at 494.

Accordingly, we reject Oyoumick's claim that the superior court violated *Blakely* when the court sentenced Oyoumick to 3 years to serve after Oyoumick declined further probation.

Even though the superior court's authority to re-sentence Oyoumick was not restricted by *Blakely,* Oyoumick's re-sentencing was governed by several rules under state law. The remainder of Oyoumick's arguments involve alleged violations of these state sentencing rules.

■ This Court has held that a sentencing judge is not allowed to automatically impose all of a defendant's suspended jail time when the defendant violates the conditions of probation. Rather, the judge must consider the totality of the circumstances (the defendant's background and original offense, coupled with the defendant's conduct on probation) and then weigh these circumstances in light of the sentencing criteria codified in AS 12.55.005.[5]

■ These principles apply equally to situations like Oyoumick's case, where a defendant refuses further probation. The fact that a defendant decides to refuse further probation does not, in itself, automatically justify imposition of the defendant's entire remaining suspended jail time.[6]

Moreover, as explained above, if the judge at a probation revocation proceeding wishes to impose a total term to serve that exceeds the presumptive term for a second felony offender convicted of the same offense, the judge must affirmatively find, by clear and convincing evidence, that the totality of the defendant's background and conduct (including the defendant's conduct while on probation) demonstrates that the defendant's case is more serious than that of a typical second felony offender convicted of the same offense—in other words, that the circumstances would have justified a sentence in

excess of the *Austin* ceiling if these circumstances had been known when the original sentence was imposed.

Oyoumick contends that the judge who imposed his probation revocation sentence, Superior Court Judge Eric A. Aarseth, violated these principles by (1) automatically sentencing Oyoumick to serve the entire remaining 2 years in prison after Oyoumick declined further probation, and by (2) failing to make a finding that the circumstances of Oyoumick's case constituted either aggravating factors or extraordinary circumstances. But the record does not bear out Oyoumick's claims.

It is true that, during the sentencing hearing, Judge Aarseth declared that he had never had another defendant say that they rejected probation but wanted something less than all of the remaining suspended time to be imposed. Nevertheless, Judge Aarseth recognized that Oyoumick was asking him to impose something less than the entire remaining 2 years, and the judge declared that one of his tasks at the hearing would be to decide "whether ... some, none, or all of those 2 years are going to be imposed."

A little later in the sentencing hearing, Judge Aarseth expressly declared that he was "not simply saying, 'there's 2 years [left on Oyoumick's sentence]', bam!—you know, impose [the 2 years] and off we go." Instead, Judge Aarseth told Oyoumick's attorney, "I'm listening to your argument. I'm willing to make that decision [as to whether to impose the entire remaining jail time]."

■ In other words, the record shows that Judge Aarseth did not simply impose 2 years because that was how much time remained on Oyoumick's sentence. The next question is whether Judge Aarseth abused his sentencing discretion when he ultimately decided to impose the entire remaining 2 years.

The prosecutor actively argued that Judge Aarseth should impose all of Oyoumick's remaining jail time. The prosecutor pointed

---

**5.** *See Betzner v. State,* 768 P.2d 1150, 1155–56 (Alaska App.1989); *Luepke v. State,* 765 P.2d 988, 990–91 (Alaska App.1988). These cases refer to the sentencing criteria as the *"Chaney"* criteria because the Alaska Supreme Court first articulated the criteria that should govern sentencing

decisions in *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970).

**6.** *DeMario v. State,* 933 P.2d 558, 562 (Alaska App.1997).

out that, in addition to his violations of probation, Oyoumick had several prior misdemeanor convictions, he appeared to have an uncontrollable addiction to alcohol, and he had declined to participate in sex offender treatment.

In response, Oyoumick's attorney pointed out that Oyoumick had voluntarily relinquished his parental rights, thus "addressing the family issue that came up because of these allegations [of sexual abuse]." The defense attorney also argued that Oyoumick had learned his lesson about alcohol abuse, because his drinking had landed him back in jail. In sum, the defense attorney urged Judge Aarseth to follow the probation officer's recommendation of only 1 more year to serve.

(The defense attorney also candidly admitted that, in large measure, her arguments about the applicable sentencing law were being put forward in defense of "principle" rather than for the actual effect that they would have on Oyoumick's situation. The defense attorney told Judge Aarseth that, because Oyoumick had been incarcerated pending the probation revocation hearing, "he [had already] done about 22 months of the 3–year sentence". In other words, "he [was already] so close to having done all [his] time"—apparently, because of good time credit.)

After hearing these arguments, and after Oyoumick declined the right of allocution, Judge Aarseth announced his decision. Acknowledging that the defense attorney had made "very strong arguments" in Oyoumick's favor, Judge Aarseth nevertheless concluded that he should impose all of the remaining 2 years of Oyoumick's sentence. He explained his decision this way:

> *The Court:* Judge Esch [the original sentencing judge] made a thorough consideration of all of the facts of the case—of you as a person, of the offense itself, [and of] the circumstances of the offense. He ... obviously was placing significant emphasis on [the sentencing goal of] rehabilitation by suspending two years of the [jail] time....
>
> [I interpret] Judge Esch [as saying], "I'm going to suspend a certain amount [of jail time] because I believe that rehabilitation ought to be a factor ..., and I believe

that there is potential for the defendant to do that....

> [But] when a defendant comes back and says, "I'm going to reject [probation], I'm basically going to eliminate your ability as a judge and [the ability of the] justice system to be able to address that [goal] of rehabilitation, ... [this] requires [me] to take a look at [the remaining] sentencing criteria[.]
>
> ...
>
> And not only [are you] rejecting probation, [but] I'm also seeing what the probation officer is reporting.... [The officer's report] talks about you as an untreated sex offender, and it [describes] statements made by you about [not needing] treatment[.] ...
>
> That tells me a lot [about] what I need to do in terms—of the sentencing criteria.... It is the decision of this Court that, ... because the rehabilitation [component of the original sentence] has been removed ... by the defendant from my discretion, both in his voluntary decision [to reject further probation supervision] and in [his] conduct ... as reported by the probation officer, ... I [need to] impose the [entire] remaining suspended time.

As explained above, this Court held in *Witt v. State* that no particular aggravating factor need be proved in order to justify the imposition of a probation revocation sentence more severe than the presumptive term for a second felony offender. Rather, we declared that if a defendant's probation violations established that the defendant had unusually poor prospects for rehabilitation, this fact could be deemed an extraordinary circumstance justifying the imposition of a probation revocation sentence in excess of the normal *Austin* ceiling. 725 P.2d at 724.

Here, Oyoumick's conduct on probation—in particular, his drinking and his rejection of sex offender therapy—provided a reasonable basis for Judge Aarseth to be pessimistic about Oyoumick's prospects for rehabilitation. In addition, Oyoumick's decision to reject further court supervision effectively barred the superior court and the Department of Corrections from pursuing future efforts to achieve Oyoumick's rehabilitation. Upon this record, Judge Aarseth could rea-

sonably conclude that Oyoumick's poor prospects for rehabilitation constituted an extraordinary circumstance (within the meaning of *Witt*) that justified a total sentence greater than 2 years to serve.

For these reasons, the judgement of the superior court is AFFIRMED.

Given our resolution of these issues, we conclude that the parties' remaining arguments are moot.